## UNITED STATES v. ROSS.

1. It is incumbent upon a claimant, under the Captured or Abandoned Property Act, to establish by sufficient proof that the property captured or abandoned came into the hands of a treasury agent; that it was sold; that the proceeds of the sale were paid into the treasury of the United States; and that he was the owner of the property, and entitled to the proceeds thereof.

2. Because the claimant's property was captured and sent forward by a military officer, and there is an unclaimed fund in the treasury derived from sales of property of the same kind, a court is not authorized to conclude, as matter of law, that the property was delivered by that officer to a treasury agent, that it was sold by the latter, and that the proceeds were covered into the treasury.

3. The presumption that public officers have done their duty does not supply proof of independent and substantive facts.

APPEAL from the Court of Claims.

*Mr.* Assistant Attorney-General Edwin B. Smith for the United States.

*Mr.* George Taylor, contra.

MR. JUSTICE STRONG delivered the opinion of the court.

It is incumbent upon a claimant under the Captured or Abandoned Property Act to establish by sufficient proof that the property captured or abandoned came into the hands of a treasury agent; that it was sold; that the proceeds of the sale were paid into the treasury of the United States; and that he was the owner of the property, and entitled to the proceeds thereof. All this is essential to show that the United States is a trustee for him, holding his money. That there is in the treasury a fund arisen out of the sales of property captured or abandoned, a fund held in trust for somebody, and that the claimant's property, after capture or abandonment, came into the hands of a quartermaster of the army or a treasury agent, is not sufficient. There must be evidence connecting the receipt of it by the treasury agent with the payment of the proceeds of sale of that identical property into the treasury. We do not say that the evidence must be direct. It must, however, be such as the law recognizes to be a legitimate medium of proof; and the burden of proof rests upon the claimant who asserts the connection.

In the present case, the Court of Claims has not found *as a fact* that the claimant's cotton came into the hands of a treasury agent, that it was sold, and that the proceeds of that cotton were paid into the treasury. No connection between the cotton captured and the fund now held by the United States has been established. Certain facts have been found, and from them it was inferred, as matter of law, that other facts existed; and upon the facts thus inferred the court gave judgment.

We think that in this there was error. The claimant owned, in May, 1864, thirty-one bales of cotton, then in a warehouse in Rome, Ga. On the 18th of that month, Rome was captured by the United States forces; and shortly afterwards the cotton was removed on government wagons to a warehouse adjoining the railroad leading from Rome to Kingston, and connecting there with a road leading thence to Chattanooga. Whether it was the only cotton in that warehouse is not found; but it is inferrible from the other facts found that it was not. Subsequently (but how long afterwards does not appear) all of the cotton in that warehouse was shipped on the railroad to

Kingston, the road being then in the possession of the military authorities. It is next shown that cotton (some cotton) arrived in Kingston from Rome before Aug. 19, 1864, and was forwarded to Chattanooga; that, on the 19th of August, forty-two bales were received at Chattanooga from the quartermaster at Kingston; that thence they were shipped to Nashville, where they were received as coming from Kingston, turned over to the treasury agent, and sold. The proceeds of sale were paid into the treasury, and no title to these forty-two bales has been asserted by third persons.

Such were the facts found; and from them the court deduced, not as a conclusion of fact, but as a presumption of law, that the thirty-one bales removed on government wagons to the warehouse immediately adjoining the railroad at Rome, shortly after May 18, 1864, were a part of the forty-two bales received at Nashville on the 24th of August, four months afterward, and there turned over to the treasury agent. It is obvious that this presumption could have been made only by piling inference upon inference, and presumption upon presumption. Because the thirty-one bales of the claimant were taken to the warehouse alongside of the railroad at Rome in May, 1864, and the cotton in that warehouse afterwards, at some unknown time (whether before or after Aug. 19 does not appear), was shipped on the road to Kingston, it is inferred that the claimant's cotton was part of the shipment. Because somebody's cotton (how much or how little is not shown) arrived at Kingston from Rome at some time not known, and was forwarded to Chattanooga before the 19th of August, 1864, it is inferred that the claimant's thirty-one bales, presumed to have reached Chattanooga, thus arrived, and were forwarded; and, because forty-two bales were received at Chattanooga on that day from the quartermaster at Kingston, it is inferred that the claimant's bales were among them. These seem to us to be nothing more than conjectures. They are not legitimate inferences, even to establish a fact; much less are they presumptions of law. They are inferences from inferences; presumptions resting on the basis of another presumption. Such a mode of arriving at a conclusion of fact is generally, if not universally, inadmissible. No inference of fact or of law is reliable drawn from

premises which are uncertain. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed. Starkie on Evid., p. 80, lays down the rule thus : " In the first place, as the very foundation of indirect evidence is the establishment of one or more facts from which the inference is sought to be made, the law requires that the latter should be established by *direct* evidence, as if they were the very facts in issue." It is upon this principle that courts are daily called upon to exclude evidence as too remote for the consideration of the jury. The law requires an open, visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made on remote inferences. Best on Evid., 95. A presumption which the jury is to make is not a circumstance in proof; and it is not, therefore, a legitimate foundation for a presumption. There is no open and visible connection between the fact out of which the first presumption arises and the fact sought to be established by the dependent presumption. *Douglas* v. *Mitchell*, 35 Penn. St. 440.

The Court of Claims thought the facts found by them entitled the claimant to the legal presumption said by this court to exist in *Crussell's Case*, 14 Wall. 1; and therefore determined, as a conclusion of law, that the cotton taken from the claimant was a part of that transmitted to Nashville, and turned over to the treasury agent and sold. We think *Crussell's Case* does not justify such a conclusion. Because property was captured by a military officer and sent forward by him, and because there is an unclaimed fund in the treasury derived from sales of property of the same kind as that captured, because *omnia presumuntur rite esse acta*, and officers are presumed to have done their duty, it is not the law that a court can conclude that the property was delivered by the military officer to a treasury agent, that it was sold by him, and that the proceeds were covered into the treasury. The presumption that public officers have done their duty, like the presumption of innocence, is undoubtedly a legal presumption; but it does not supply proof of a substantive fact. Best, in his Treatise on Evid., sect. 300, says, " The true principle intended to be asserted by the rule seems to be, that there is a

general disposition in courts of justice to uphold judicial and other acts rather than to render them inoperative; and with this view, where there is general evidence of facts having been legally and regularly done, to dispense with proof of circumstances, strictly speaking, essential to the validity of those acts, and by which they were probably accompanied in most instances, although in others the assumption may rest on grounds of public policy." Nowhere is the presumption held to be a substitute for proof of an independent and material fact. The language of the opinion in *Crussell's Case* would perhaps mislead, were it not read in connection with the finding of facts. The question was, whether seventy-three bales of cotton of the plaintiff's had been forwarded, with a much larger amount, to the officer in charge of military transportation at Nashville, and by him turned over to the treasury agent. There was no direct proof that the plaintiff's cotton was included in the shipment; but there was proof that the treasury agent forwarded the cotton received by him to the supervising agent at Cincinnati, where a sale was soon after made, and some of the bales sold were marked with the plaintiff's mark. The question, therefore, whether the military officer who shipped the large quantity had shipped with it the cotton of the plaintiff, was not left to depend upon the presumption that he had done his duty. There was distinct and independent proof of it in the fact that some of the plaintiff's cotton had reached Cincinnati, and had been sold there. The presumption was only confirmatory of what had been proved by evidence, and in confirmation of that proof it might be invoked. This is all that can fairly be deduced from the opinion of the court as delivered by the Chief Justice.

No more need be said of the present case. It is not found as a fact that the identical cotton captured from the plaintiff ever came into the hands of a treasury agent, or that it was sold, and that the proceeds were paid into the treasury; and the presumption of law adopted by the court, that the cotton was a part of that transmitted and sold, was unwarranted.

*Judgment reversed, and cause remanded for a new trial.*