## MANNING *v.* INSURANCE COMPANY.

1. A contract between A. and an insurance company stipulated that for his services as its agent the company would pay him twenty per cent on the ordinary premiums upon all policies for the first year, and "seven and one-half per cent for the second and subsequent years of assurance," said allowance to continue for twenty-five years, should the policies remain so long in force. It was also stipulated that he should appoint sub-agents, that all moneys should be promptly remitted to the company on or before the fifteenth day of each month, and that his "commissions should accrue only as the premiums were paid to the company." The company having discharged him from its service, June 2, 1871, brought this suit to recover its moneys in his hands, and introduced evidence that he was indebted to it in a certain amount, and had been properly removed. Among other defences, he offered to show that a set-off existed in his favor for commissions collected and received by the company from May 1, 1871, to Dec. 23, 1871, and interest thereon. After having made proof of notice to the company to produce the books and papers necessary to show the amount of renewal premiums received by it from policies obtained through his agency during the period mentioned, and the books and papers not being produced, he testified that on June 2, 1871, there were policies in force upon which the annual premiums would be $87,000, as it appeared in his accounts with his sub-agencies, that his annual commissions upon the premiums would amount to $8,391.14, and that computing the amount which would be due to him, accruing between that date and Dec. 23, 1871, they amounted to about $4,754.97. No direct proof was given that any of the policies in force on May 1, 1871, or on June 2, 1871, had been renewed or extended, or that any of the annual premiums becoming payable after those dates had been paid to the company or received by it. The court instructed the jury, in effect, that if A. had been removed from his agency without just cause, they might find from this evidence what amount the company should have

received of renewal premiums, but if they found that he had been justifi-
ably removed, there was no proof for their consideration of the amount
of renewal premiums received or collected, in the hands of the company,
upon which he was entitled to commissions. *Held*, 1. That A. had no just
ground of exception to the charge. 2. That the burden was on him to
prove that the premiums had been *actually paid* to the company.

2. It is error to submit to the jury to find a fact of which there is no competent
evidence.

3. The only presumptions of fact which the law recognizes are immediate infer-
ences from the facts proved.

ERROR to the Circuit Court of the United States for the
Southern District of New York.

The facts are stated in the opinion of the court.

*Mr. William Henry Arnoux* for the plaintiff in error.
*Mr. James C. Carter*, contra.

MR. JUSTICE STRONG delivered the opinion of the court.

The John Hancock Mutual Life Insurance Company, on the
second day of December, 1868, employed Manning and one Hall
as its general agents for New York and other States, to secure
applications for life insurance, and to collect and pay over pre-
miums on insurances effected. It was stipulated that the agree-
ment should continue in force three years from Sept. 1, 1867, and
that it might thereafter be terminated by either party on giving
six months' notice. By the contract, the compensation allowed
to Hall and Manning was twenty per cent on the ordinary pre-
miums upon all policies (excepting those paid for by single
payments) for the first year, and seven and one half per cent
for the second and subsequent years of assurance. An addi-
tional allowance was also made for travelling and incidental
expenses. It was further stipulated that these allowances should
continue to be paid for twenty-five years from the date of each
policy, should any continue so long in force; and, further, that
the agents should remit monthly all moneys collected by them,
and return all uncollected policies and receipts sent to them for
collection by the company. The contract declared that com-
missions should accrue only as the premiums were paid to the
company.

On the 13th of May, 1870, Hall assigned his interest in the
contract to Manning, with the approval of the company.

On the seventeenth day of September, 1870, a new arrange-ment in lieu of the former was made between the parties, by which it was agreed that Manning should thenceforward re-ceive for his compensation $5,000 per annum, the commission to sub-agents to be twenty-five and seven and one-half pei cent; that Manning should collect the renewals of the old business of Hall, and Hall and Manning, and receive the re-newal commissions which said renewals were entitled to under the former contract.    This contract was terminable at the option of the company at any time within three years.

About the 1st of June, 1871, the company discharged Man-ning from its service, for reasons which the verdict in the case establishes to have been lawful and sufficient, and brought this suit to recover its money in his hands.

Among other defences set up against the claim of the plain-tiff, the defendant offered to show that a set-off existed in his favor for commissions collected and received by the plaintiff from May 1, 1871, to Dec. 23, 1871, and interest thereon to the time of the trial.    To sustain this (after having made proof of notice to the plaintiff to produce the books and papers necessary to show the amount of renewal premiums received by it from policies obtained through his agency during the period mentioned, and the books and papers not being pro-duced), he gave evidence to prove that on the 2d of June, 1871, there were policies in force upon which the annual premiums would be $87,000, as it appeared in his accounts with his sub-agencies; that his annual commissions upon the premiums would amount to $8,391.14; and that, computing the amount which would be due to him, accruing between June 2, 1871, when he was discharged, and Dec. 23, 1871, when the suit was commenced, they amounted to about $4,754.97.

But no direct proof whatever was given that any of the poii-cies in force on the 1st of May, 1871, or on the 2d of June, 1871, had been renewed or extended, or that any of the annual premiums becoming payable after those dates had been paid to or received by the plaintiff.

Upon this evidence the Circuit Court instructed the jury, in effect, that if the defendant had been removed from his agency without justifiable cause, they might find from it what amount

the plaintiff should have received of renewal premiums; but if they found he was justifiably removed, there was no proof for their consideration of the amount of renewal premiums received or collected in the hands of the company upon which he was entitled to commissions.

In another part of the charge the same instruction was given, though in different order. It was, that if by his own conduct the defendant rendered his removal necessary, before he could recover from the plaintiff his portion of the renewals, it would be incumbent upon him to show, not only how many policies had been taken by his agency, and the premiums due upon them, but' also that the premiums had been paid to the plaintiff. On the other hand, if by its wrongful act of removing him the plaintiff deprived him of the means of collecting the premiums, then when he had shown that renewal premiums to a certain amount were due and payable upon life policies at the time when he was removed, which because of its own act the plaintiff was bound to collect, if collectible, he was entitled to the presumption that they were collected as they became due, and, therefore, the burden would rest upon the company to show that policies had lapsed, or that without its fault it had been unable to collect the renewal premiums. To so much of these instructions as ruled in effect that if the defendant was rightfully dismissed from the employment of the plaintiff there was no evidence for the consideration of the jury as to the amount of the renewals, and, of course, of the amount of commissions thereon, exception was taken, and it is now assigned for error.

We think, however, the defendant has no reason to complain. The charge was, at least, quite as favorable to him as he had any right to ask. By his contract with the plaintiff it was expressly stipulated that the " commissions should accrue only as the premiums are paid to the company." It was incumbent upon him, therefore, to prove, not merely that they were due, which might possibly have been paid, but that they had been actually paid, and paid not merely to his sub-agents, but paid to the plaintiff. If they had been thus paid, the plaintiff held the money, to the extent of the commissions, for his use. If they had not been paid to the plaintiff, it had nothing in hand which belonged to him. His set-off was in the nature of an

action for money had and received to his use.   The plaintiff
owed him nothing until it received the money.   Now, it is
very plain that proof of the existence of outstanding premiums
which became payable before his set-off was pleaded fell short
of any proof that those premiums had been actually paid, or
that they were in the hands of the plaintiff.

It is argued, however, that because the plaintiff failed to
produce its books and papers necessary to prove the amount
of renewal premiums received by it, the defendant was at
liberty to prove the amount by what he calls " secondary evi-
dence ; " or, in other words, " by the best evidence the case
afforded."   This may be admitted; but the receipt of the re-
newal premiums by the plaintiff was still a fact to be proved,
either by direct or circumstantial evidence.

No direct proof of such receipt was offered, as we have said.
None was attempted.   The defendant might have resorted to
a *subpœna duces tecum*, or to an order of the court to produce
papers and books, or, perhaps, to a bill of discovery.   He did
neither.   He simply proved, as a fact, that there were life
policies in existence, secured through his agency, renewal pre-
miums upon which fell due before the suit was brought.   His
evidence stopped there, and he now complains that the jury
was not allowed to presume from that fact that the renewal
premiums had been paid to the plaintiff, and to presume it
against a party who was not in the wrong, a party who had
rightfully dismissed him from his agency, and who was under
no obligation to collect the premiums at all.   But was that a
conclusion which the jury should have been permitted to draw
from the fact proved ?   It is error to submit to a jury to find a
fact of which there is no competent evidence.   From the fact
that a debt existed, it does not follow as a necessary or even
reasonable sequence that it has been paid.   Nor is there any
presumption of its payment upon which a jury can act.   Cer-
tainly none until after the lapse of twenty years.   Much less
can such a presumption arise in regard to the payment of re-
newal premiums upon policies of insurance such premiums
not being debts due to the insurers, and not being collectible
as debts.   We do not question that a jury may be allowed to
presume the existence of a fact in some cases from the exist-

ence of other facts which have been proved. But the presumed fact must have an immediate connection with or relation to the established fact from which it is inferred. If it has not, it is regarded as too remote. The only presumptions of fact which the law recognizes are immediate inferences from facts proved. Remarking upon this subject in *United States* v. *Ross* (92 U. S. 281, 284), we said: "Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves be presumed." Referring to the rule laid down in Starkie on Evidence, page 80, we added: "It is upon this principle that courts are daily called upon to exclude evidence as too remote for the consideration of the jury. The law requires an open and visible connection between the principal or evidentiary facts and the deductions from them, and does not permit a decision to be made on remote inferences. Best on Evid. 95. A presumption which a jury may make is not a circumstance in proof, and it is not, therefore, a legitimate foundation for a presumption. There is no open and visible connection between the fact out of which the first presumption arises and the fact sought to be established by the dependent presumption. *Douglass* v. *Mitchell*, 35 Pa. St. 440."

If these principles be applied to the present case, the inadmissibility of the presumption which the defendant contends the court should have permitted the jury to draw becomes apparent: That renewal premiums to a certain amount, upon which he was entitled to commission, had been paid to the company, was the ultimate fact which was necessary to be proved. What the evidence did prove was, that there were policies in force on the 2d of June, 1871, the annual premiums upon which were $87,000; that he would be entitled to commissions upon renewals of the policies, if they should be thereafter renewed, and if the renewal premiums should be paid to the company, and that these premiums were to be collected by his sub-agents and paid over by them. These were the primary facts. Every thing more was left to presumption. The jury, therefore, were to presume that the policies did not lapse, and that they were renewed. Built on this presumption was another, namely, that the renewal premiums were paid

to the agents; and upon this a further presumption, that the premiums had been paid over by the agents to the company, or had been immediately collected by it. This appears to us to have been quite inadmissible. A verdict of a jury found upon such evidence would have been a mere guess. The evidences of fact did not go far enough. We think, therefore, the court was not in error in withdrawing it from the consideration of the jury.

What we have said renders it unnecessary to notice at length the several assignments of error. If there was no evidence of the receipt of renewal premiums by the company, what would have been the interest upon them had they been received was quite immaterial. So, also, was it immaterial to show what would have been the probable duration of the policies.

*Judgment affirmed.*