Mr. Justice Bradley
delivered the opinion of the Court:
This is an action brought by Harriet L. Woods, by her next friend, against the vestry of Trinity Parish, to recover damages for a permanent physical injury caused by the negligence of the defendant, in the falling of a shutter from the tower of the church building. She claimed fifty thous- and dollars and recovered a verdict for twenty thousand dollars. The defendant moved to set aside the verdict upon two grounds; first, because the evidence was insufficient to sustain it; and second, because the damages awarded by the jury were excessive. This motion was overruled by the court below: The cause is here upon a bill of exceptions, and case stated.
It appears by the evidence that on May 26, 1883, while the plaintiff, a young girl of eleven or twelve years of age, was standing in the street upon the paved space near the tower at the southwest comer of the church ‘building of the defendant, the building being situated at the comer of C and 3d streets, N. W., in the city of Washington, she was struck by a piece of a shutter and her body was paralyzed below the shoulders. She was permanently injured. It appears that the shutter which caused the injury was a wooden structure about eighteen feet in height and about three feet in width, composed of heavy timbers forming the framework, with wide and heavy slats interposed between the uprights, and that it was secured in an opening in the masonry of the *542 tower at about forty feet elevation from the ground. No witness was able to testify, and there was no evidence as to what was the occasion of the fall of the shutter. In falling to the ground, it was shattered, a piece of it struck the plaintiff, and caused the injury. An examination of the pieces indicated that nails of a large size had been used to secure the shutter in its position; these nails having been driven into the joints between the stones and brickwork composing the tower.
Sometime in the month of February, prior to the accident, the defendant caused an examination to be made of the church building with the view of ascertaining what repairs were necessary. This examination was made by Mr. Edward Baldwin, an expert builder, who made a report and submitted it to the vestry. In that report, he referred to certáin repairs not necessary to mention in this connection, and with reference to the tower he suggested that: “The wooden frames of the towers be repaired where necessary and all the woodwork of the tower above the main roof, and the tinwork to have two coats of paint of the very best material of its kind.”
I-Ie also submitted specifications of the cost of making the repairs, and included the cost of the erection of a scaffold around the tower for the purpose of making the needed repairs upon the stonework.
The evidence does not indicate by this report that any suggestion was made to the vestry of the defendant, or that Mr. Baldwin orally suggested that this shutter, or any one of the several shutters in this tower was insecure in its fastening. Mr. Baldwin was not employed to make the repairs, but there was evidence tending to show that such repairs as he advised were made. A stonemason, Bums by name, was employed to repair the stonework of the tower. He did not attempt to erect the scaffold suggested by Mr. Baldwin, but he provided a platform for his work by projecting timbers through openings made by removing the slats from the shutters, including the one that fell, and resting these *543 timbers upon blocks, which, in turn, rested upon the masonry. Burns was examined as a witness and testified that the timbers, that so projected through the shutter which fell, were so arranged that they did not rest upon the lower sill of the shutter and did not touch or interfere with its vertical frame; that there was nothing in his work that tended to or did render the shutter insecure in its fastening, and that he had no notice or knowledge, at the time that his work was completed and his scaffolding removed, that it was insecure. He also testified, that, in removing the scaffold, the work was 'sex performed as not to interfere with the fastening or security of the shutter in its place.
There was some evidence indicating that the day of the accident was fair, mild, and bright, and also some evidence tending to show that just before the fall of the shutter there was a strong puff or gust of wind; but no witness was examined who pretended to have personal knowledge of the cause or occasion of the accident.
The exceptions cover the admission and rejection of evidence, the granting of certain instructions to the jury in behalf of the plaintiff, and the refusal of others prayed in behalf of the defendant.
The first exception taken was to permitting the plaintiff, against the objection of the defendant, to ask the witness Edward Baldwin the following question: “ Is the manner in which you proposed to have this scaffolding built the proper manner, in your judgment, to b,uild a scaffold for making, such repairs as were called for in that tower?” The witness answered that it was. We are of opinion that the objection that the question called for irrelevant and immaterial matter should have been sustained. The question directed the attention of the jury to the indirect suggestion, that the failure to construct such a platform was an act of negligence on the part of the defendant, which they might consider, whereas there had not been, nor was there subsequently offered any evidence indicating that the accident was contributed to, or caused by the failure to erect such a scaffold.
*544 The second, third, fourth, fifth and sixth exceptions cover the rejection by the court of several items of evidence offered by the defendant. They were not pressed at the hearing, and are not apparently of sufficient consequence to justify consideration.
The seventh exception partly relates to the rejection of evidence tending h> show where the inner line of the sidewalk in front of the church, and the outer line of what might have been parking, but was not, coincided, with the view of indicating that, when she was injured, the plaintiff was not standing upon the sidewalk proper, but upon the paved space between the sidewalk and the front building line of the edifice. The evidence indicated that the whole space in front of the church was paved and unenclosed. It was part of the public street, upon which any one of the public had a right to be, and it was therefore immaterial upon which part of it the plaintiff was standing at the time of the accident. We are of opinion that there was no error in excluding the evidence.
The remaining item under that exception is the overruling of the objection of defendant to a question put to the witness Edward Baldwin in rebuttal. He was asked whether he had stated to the vestry that no repairs were to be made to the frames, and that nothing was to be done to them but to put in the slats. It appears that there was evidence tending to prove that Baldwin had stated to some members of the vestry that repairs to the frames were needed. The question as asked is perhaps a little fuller than what was proved in behalf of the defendant; but the variation is not sufficient to justify the court in holding that it was error in the trial .court to permit the question. It is objected by the plaintiff that, by the bill of exceptions, it does not appear that the question was answered, and that therefore no error is shown. The whole evidence is made a part of the record, however. The bill of exceptions refers to the record and the exhibits contained in it, in several places, and this exception states that “because said exceptions are not *545 apparent upon the record of said cause,” they are made a part of the' record therein. The case and exceptions must be treated together, as the complement of each other, and by the case it appears that the question was answered in the negative. In this connection, we direct attention to the organic act establishing this court (Sec. 805, R. S. of D. C.), which confers the alternative right, upon overruling a motion for a new trial and an appeal taken, to. have bill of exceptions, or case settled in the usual manner. Both are not authorized. See O’Neal vs. The Dist. of Col., McA. & Mackey, 68; in re Will of John Hoover, 18 D. C., 541.
The eighth exception covers the refusal of the court to strike out as hearsay the evidence given by Anne J. Chapman, as to the point where the shutter struck upon the ground, because it appeared that she did not see the shutter fall, that she only saiw the malrk of a fresh bréale on the pavement, and was told that it was where the shutter struck. The motion was properly overruled, inasmuch as the evidence was competent to the extent that it indicated a fresh break, and where the break was located. We are of opinion that it was unimportant whether the shutter fell upon the paved space that might have been, but was not parked, or whether it fell upon the sidewalk.proper. The only material matter was that it fell, in the street where the public had a right and were liable 'to pass, or to be found. It is apparent that a portion of her evidence was entirely competent, and it would have been improper to have granted the motion.
The only exception taken to the charge of the court was to several “suppositious” cases, given by way of illustration by the trial judge. In the disposition that will be made of this case it will be unnecessary to criticise those iten/s, and they are passed without comment.
All of the instructions granted to the plaintiff are mentioned by the court in his charge; the twelfth reads as follows:
“If the jury believe from the evidence in this case that the defendant employed Mr. Baldwin to examine the con *546 dition of said church, and to make a report to the defendant of what repairs were needed, and if the jury further believe that he did make a report .that the frames of these shutters should be repaired, such report would be notice h> the .defendant that those frames were not in proper condition, and, thereupon, they were bound to employ reasonable means and efforts to inform themselves as to what their actual condition was (that is, what the specific defects were, if any), and failure in this regard would be negligence on their part; and the 'fact that they employed Mr. Burns to repair the stonework and Mr. Brown to paint the shutters' would not of necessity relieve them from the duty to inform themselves as to the actual condition of those shutters and to place them in such condition as would make .them safe. Nor would the fact, if it be the fact, that Burns, in doing his work, left the shutter improperly repaired, and thus less secure than it was before, relieve this defendant from that duty. If, in fact, the shutter was Insecure, and if, in making such examination, as' the report of Baldwin made it their duty to make, they could by the employment of reasonable means and diligence have discovered this insecurity, and if they failed to malee such examination and to make any repairs to the frames in respect of their condition or their state of security, this is negligence which,, would render the defendant liable to the plaintiff in this case.”
First, this instruction improperly suggests to the jury that upon the evidence they might find that Mr. Baldwin reported to the defendant that the frames of the shutters should be repaired. The evidence given by Mr. Baldwin makes no pretence that he so reported, and the evidence for the defendant expressly negatives such inference, and indicates that Mr. Baldwin’s statements relative to repairs upon the shutters referred solely to the slats. Second, the jury were informed that if they found that such report was made, as matter of law, the defendants were bound to use reasonable means to inform themselves what the specific defects were. The inference of fact indicated was not jus *547 tified by the evidence, as just stated, and the inference of law could not be drawn from an uncertain premise. Third, the jury were instructed that the report of Baldwin made it the defendant’s duty to make an examination of the shutter, and that further if in such necessary examination, by reasonable means and diligence they could have discovered the insecurity, and failed to examine or to make the repairs, they were guilty of negligence. The court may not have intended to direct the jury that Baldwin’s report imposed upon the defendants this duty of examination, but we understand that to be the legitimate import of the instruction. The instruction is otherwise confusing and misleading. It fails to leave to the jury solely the question whether the defendant used reasonable care and diligence to keep the building and shutters in such condition as to prevent their being a source of danger to the public. This was a matter exclusively for them.
The plaintiff’s sixth instruction is as follows:
“ If the jury find that, in the winter prior to the accident, the defendant employed a person to examine the shutters and report their condition, and he failed to notice or report the insecurity of this shutter, such report is not necessarily a defence to this action, provided the shutter was, in fact, insecure.”
This instruction is bad as being addressed to a segregated circumstance in the evidence, as tending to mislead the jury by directing them that this circumstance was not necessarily a defence, and thereby indicating to them that they might disregard it in considering the case; whereas, it tended, as an element, to establish reasonable care and diligence on the part of the defendant. The instruction indirectly intimates that care and diligence on the part of the defendant is no defence if, in fact, the shutter was insecure, thereby making the defendant liable as an insurer.
The plaintiff’s ninth instruction is as follows:
“If the jury believe from the evidence in this case that the defendant undertook to repair the tower in which this *548 shutter was, and employed mechanics to make such repairs, and if the juiy further believe, that in the construction of the scaffold, for the purpose of making such repairs, or in the removal of said scaffold, or both, this shutter was loosened, and so rendered insecure and unsafe, it was the duty of the defendant, after said contractor had removed his scaffold, to see to it that the contractor had left this shutter in an apparently safe condition. The defendant could not rely upon the care and skill of the contractor in this regard, but had a positive duty to perform in relation thereto, and if the contractor did leave it in a manifestly unsafe condition, and„if the defendant’s agents .could easily have seen such defects and insecurities, but did not, by reason of which it fell, the defendant is liable.”
This instruction is bad in several particulars. First, there was no evidence to justify the jury in the conclusion to which they were invited, that the shutter was loosened by the construction or removal of the scaffold. No one so testified, and Mr. Burns, the contractor who put it up and removed it, stated positively that the scaffold did not rest upon or affect the shutter, .and that its security was not impaired in any way by him. Second, the jury were improperly directed if they drew this unpermissible conclusion of fact, that as matter of law, it was the positive duty of the defendant to see to it that Burns had left the shutter in an apparently safe condition. U. S. vs. Ross, 92 U. S., 281; Manning vs. Insurance Co., 100 U. S., 693.
At the instance of the defendant, the trial court granted and gave to the jury several instructions which laid down the measure of responsibility for a negligent act as favorably as the defendant could expect; but the qualification of those instructions by the inconsistent provisions expressed in the instructions granted to the plaintiff, which have been just criticised, was so marked as to necessarily confuse the jury and .operate injuriously to the defendant. Several instructions asked by the defendant and refused by the court, to which exceptions were taken, are relied upon as error, and demand some reference and comment.
*549 The defendant’s second instruction was as follows:
“The jury are further instructed that inasmuch as the declaration charges that the defendant knew that said shutter was in a loose, unsafe and dangerous condition, it is therefore incumbent on the plaintiff to establish or prove the fact of that knowledge by a preponderance of testimony.” This instruction sought to impose upon the plaintiff the obligation of establishing by a preponderance of testimony that the defendant knew of the unsafe condition of the shutter. This degree of knowledge was not essential in order to enable the plaintiff to make out her case. It was sufficient, that, evidence of the want of security of the shutter in its fastening being given, the plaintiff should indicate by evidence, notice to the defendant of such defect, or circumstances from which such notice could properly have been presumed. The instruction was rightly refused.
The fourth instruction asked by the defendant was as follows:
“ Should the jury find, from the evidence, that the accident resulted from a defect in the shutter existing at the time of the accident, but of which defect the defendant had no actual notice, then notice can only be presumed from the existence of said defect for so great a time that a reasonably prudent man would have observed the said defect, and such previous existence of said defect for said period of time must be affirmatively proved and cannot be presumed.”
This instruction was practically covered by the defendant’s third prayer which was given by the court, and we find no error in its rejection.
Another instruction, marked number 4, was as follows:
“If the jury shall find, from the evidence, that there was a defect in .the said shutter which would not have impaired its safety under ordinary circumstances, even if they further find that the defendant had actual notice of said defect, yet if 'they shall further find that an unusual gust of wind cooperated with the said defect to cause the said accident, and that the said accident would not have occurred without said gust of wind, then they shall find for the defendant.”
*550 The refusal of this instruction was justified by the fact that it is predicated of circumstances of which we find no evidence in the record, namely, that there was a defect in the shutter which would not have impaired its safety under ordinary circumstances.
The fifth instruction asked by the defendant was as follows :
“The jury are instructed, as matter of law, that the defendant in this case was bound to no greater degree of care in the management of its real estate than is, by law, required from the owner of personal property; and that it is in no otherwise responsible for negligent acts committed with respect to said real estate by others than would be the owner of personal property for a similar use of his property.”
This appears to be the statement of an abstract proposition of law, and as such, was properly refused, and it also suggests the liability of an independent contractor, which, in our view of the evidence in this case, had no place which would justify its consideration.
The twelfth instruction is very lengthy and is as follows:
“ If the jury shall find from the evidence that the defendant was the owner of the premises in question; and that in the month of February, 1883,'it caused a careful examination of the condition of its premises to be made by the witness Edward Baldwin; and if they shall further find from the evidence that the said Baldwin was an architect and builder of good repute and skilled in his calling; and if they shall further find from the evidence that the said Baldwin actually made examination and reported his judgment thereupon to the defendant, and that the defendant, acting upon said report, employed the witness Burns- to do such repairs upon the stonework of the south tower of the said premises as were recommended by the said Baldwin, and further employed one Macauley and the witness Brown, to do such other repairs upon the said south tower as were recommended by the said report; such repairs being all recommended by said Baldwin in respect thereto; and if the jury *551 shall further find from the evidence that the said Burns and Macauley and Brown were men of good repute in their respective trades, and that those trades were such as were specially concerned in the doing of the work upon the said south- tower recommended by the said Baldwin; and if the jury shall further find from the evidence that the defendant retained no control whatever over the said Bums or Macauley or Brown, or either of them, in the doing of their respective works in pursuance of the recommendations of said Baldwin; and if they shall further find from the evidence that the said Bums and the said Macauley and the said Brown did execute the work entrusted to them, respectively, by the said defendant in pursuance of the recommendations of the said Baldwin; and if the jury shall further find from the evidence that the accident in question resulted from the negligent manner in which the said contractors, or any of them, did the work entrusted to them, then the jury are instructed that the defendant has done its full duty in the premises and is not to be held responsible for the acts of omission of the said contractors, or any of them, unless they shall further find that after the said contractors, or any of them, had finished .their work, the condition of the said south tower or any part thereof was such as to charge a reasonable man with notice that the said contractors, or any of them, had done their or his. work defectively, or that 'the south tower, after such work was done, was in so palpably a dangerous condition as to suggest to a reasonably prudent man the necessity of making further repairs thereon, in order to insure its safe condition.”
One sufficient criticism of this instruction is that so far as the paragraph is concerned which premises “if the jury shall further find from the evidence- that the accident in question resulted from the negligent manner in which the contractors did the work,” that there was no evidence which would justify the jury in coming to that conclusion. Another criticism is that there was no evidence tending to indicate that the accident occurred at the time of, or as in *552 cident to the work done by Burns in constructing or removing the platform, and therefore that the principle of the responsibility of an independent contractor could not apply.
The fifteenth instruction had been substantially given in other instructions granted by the court, and might safely have been given"; but we are of opinion that the refusal of the court to give it was not error.
The seventeenth instruction was as follows:
“ If the jury, from all the .evidence, find that the moving cause of the accident is not manifest, but must be sought by inferences from the testimony, and the testimony will justify the finding of a cause which would relieve the defendants from liability, just as reasonably and naturally as the testimony will justify the finding of any cause on account of which the defendant would be liable, then the plaintiffs have failed to establish their cause of action and defendants are entitled to a verdict.”
This instruction would have tended to confuse the jury in their consideration of the evidence. It tended to improperly interfere with the exercise of their judgment and reason in considering the evidence and was properly refused.
The nineteenth instruction was as follows:
“ If the jury find, from all tire evidence in the cause, that at the time the plaintiff received the injury in -question she was upon the platform in front of the church — a temporary structure pertaining particularly to the church for convenience of access thereto — elevated as a step some inches above the sidewalk, and forming no part of such walk, and that she was thereon at the time, not for any purpose of passage or travel, but for play; and if from such evidence the jury further find that the defendant had no actual knowledge that the shutter frame in question had become insecure; and that such condition of insecurity was caused by some carelessness of the workmen employed by Burns, an independent contractor, in using or removing their scaffold timber, so recently that defendant was hot chargeable with negligence in *553 not having discovered such insecurity, then the jury must return their verdict in favor of the defendant”
This was properly refused, inasmuch as it relieved the defendant from responsibility, provided the plaintiff, at the time of the accident, was not standing upon the sidewalk as distinguished from the space in front of the church edifice, but was standing upon that paved space. As we have already intimated, we do not perceive any difference in the degree of responsibility on the part of the defendant for an act of negligence of the character for which recovery is sought,- to one who stood upon the paved space, rather than upon the sidewalk proper. The paved space was open and unenclosed. The public were at liberty to be, and were invited by the want of enclosure, and by the' fact of paving, to pass and repáss, and to stand upon it for all proper purposes.
This disposes of all of the rejected instructions asked in behalf of the defendant.
The only remaining question relates to the matter of excessive damages. The accident to the plaintiff was a most melancholy one. Its effect upon her and upon her whole future life was terrible and irretrievable. No money judgment' could compensate for such an injury. If entitled to a verdict at all, upon the evidence, however, the amount of the 'verdict should have been reasonable, not only with reference to the character of the injury to the plaintiff, but with reference to the circumstances of the defendant; It was never intended by the law that juries, excited by feelings of sympathy for an' injured plaintiff, should be permitted by wild and excessive verdicts to retaliate upon a defendant for an act of mere negligence, by .subjecting him or it to a loss that would amount to practical forfeiture. We are of opinion that the amount of this verdict was unreasonable, considering the circumstances of the plaintiff, the probabilities of her being compelled to earn her own living, and the annual income she could reasonably be expected to realize by her' own exertions, and with reference to the circum *554 stances of the defendant; and if there were nothing in the trial which would justify the setting aside of the verdict for error in law, the excessive amount of damages awarded by the verdict would require that it should be set aside.

The verdict is set aside and the case is remanded to the special term for a new trial.