POSTAL TELEGRAPH–CABLE CO. v. LIVERMORE & KNIGHT CO.

(Circuit Court, D. Rhode Island. August 2, 1911.)

No. 2,752.

1. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNLAWFUL COMPETITION—MIMICRY—DECEPTIVE IMITATION.

Where defendant, manufacturing advertising specialties, put out an envelope similar to those used by complainant telegraph company to inclose bona fide telegrams, intending that the envelopes should be used for advertising purposes, the word "Telegram," printed thereon, being used to attract attention and to distinguish the envelope, which was intended to be sent through the mail, from ordinary mail matter, but it also appeared that the momentary deception that the envelope contained a telegram was immediately dispelled on opening the envelope and seeing that it was merely an advertisement, such similitude was mimicry, rather than deceptive imitation.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 70.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNLAWFUL COMPETITION—BILL—ACTUAL INJURY—INFERENCE.

Defendant, manufacturer of advertising specialties, manufactured and sold envelopes in imitation of those used by complainant telegraph company for telegrams, intending that they should be used for advertising matter sent through the mail. Complainant sued to restrain such use, alleging that the envelopes were used to deceive the public and cause them to believe that they were the envelopes of the complainant, and that they contained messages transmitted over complainant's wires and delivered by complainant; that defendant's envelopes had been generally mistaken by the public, by the postal authorities, and especially by complainant's patrons, for the envelopes of complainant, and had induced the public and complainant's patrons to give to the envelopes that prompt and immediate attention which was usually given to telegraphic messages; and that the same would cause annoyance to complainant's patrons and an injury to complainant's business. Held that, since the use of such envelopes if deceptive at all, the deception was merely momentary and not deceitful, complainant's claim of injury was derived entirely from inferences based on another inference, and that the facts were insufficient to establish actionable injury.

Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 70.*

Unfair competition in use of trade-mark, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Bill by the Postal Telegraph-Cable Company against the Livermore & Knight Company. Demurrer to bill sustained.

---

Edwards & Angell, for complainant.
Comstock & Canning, for defendant.

BROWN, District Judge. The complainant charges the defendant with imitation of the envelopes in which complainant's telegrams are delivered.

Appended to the bill are Exhibits A and B of different styles of envelope used by the complainant. The alleged imitation is also appended as Exhibit C.

The imitation is not close, but upon demurrer the allegation that the defendant's envelopes have been mistaken for those of the complainant requires us to assume for this demurrer that the defendant's envelopes are somewhat imitative. While it is doubtful if the exhibits themselves establish a deceptive imitation, yet, if supplemented by evidence of actual deception, this might support the bill in this particular.

The defendant is a manufacturer of advertising novelties, and Exhibit C is an imitation of an envelope for telegrams. It is alleged that they are made in the likeness of the envelope of the complainant—

"for the purpose of deceiving the public, and causing them to believe the said envelopes of the defendant are envelopes of the complainant, and to believe that said envelopes of the defendant contain messages transmitted over the complainant's wires and delivered by the complainant aforesaid."

The defendant makes said envelopes for sale to its customers to use for advertising purposes. They are so constructed that upon being opened they unfold, and upon the inside surface is a space for printing advertisements.

[1] It is evident from an examination of Exhibit C that the word "Telegram" is used to attract attention and to distinguish the envelope, which is intended to be sent through the mail, from ordinary mail matter. It is also apparent that, if there is a momentary deception and a momentary false belief that the envelope contains a telegram, this is immediately dispelled upon opening the envelope and seeing that it is merely an advertisement. This is mimicry, rather than deceptive imitation.

[2] From the allegations of the bill it is very clear that the defendant does not design to secure for itself or for its customers any of the telegraphic business of the complainant. It is doubtless intended by the manufacturer that an impression shall be created on the mind of the receiver by the word "Telegram," though it is doubtful whether it is within the design or purpose of the defendant that the receiver should gain the impression that it is a telegram from any particular company.

Assuming, however, that the envelope might convey both the impression of a telegram and the impression of a telegram from the complainant, we have to inquire whether, as the ordinary elements of a case for the infringement of a trade-mark or for unfair competition are wanting, the complainant has stated a case entitling it to equitable relief. The bill alleges that the—

"defendant's envelopes have been generally mistaken by the public, by the postal authorities, and especially by the complainant's patrons, for the en-

velopes of the complainant, and have induced the public and the complainant's patrons to give to said envelopes that prompt and immediate attention which is usually given to telegraphic messages of the complainant."

This feature, however, can hardly be attributed to any special imitation of complainant's envelope, but would doubtless be due to the fact that the envelope purported to contain a telegram, by whatever company transmitted and delivered. It is alleged that because of this prompt attention, and because of deception, there has resulted in the past, and is likely to result in the future, loss of time to the public, and especially to complainant's patrons. It is further alleged that the receipt of said deceptive envelopes has caused alarm in the past, and is likely to cause alarm in the future, to the public and the complainant's patrons; but it is obvious that no special alarm could arise from the false belief that the telegram came from the complainant company, rather than from any other company, and if imitation telegrams, like genuine telegrams, are likely to cause alarm to the receiver, this cannot be regarded as a substantial ground for the intervention of equity. To cause alarm by sending a real telegram or an imitation telegram under ordinary circumstances, and save for very exceptional surroundings, would be damnum absque injuria.

It is also alleged that the advertisements appearing upon certain of the envelopes have been of an offensive character. This, however, seems an irrelevant allegation, since there is nothing to show that the defendant is responsible for the special character of advertisements which its customers may place upon the advertising device.

It is alleged that by reason of the facts above stated the public, and particularly the complainant's patrons, have become hostile to these envelopes of the defendant and dislike to receive them, and are greatly displeased and annoyed thereby, and, further, that many of the recipients of said envelopes have believed, and many future recipients are likely to believe, that the complainant has permitted the use of said device by those whose goods are advertised, thereby permitting the public to be deceived and annoyed.

There is a certain inconsistency between the contention that there is any substantial deception, and the contention that receivers are likely to believe that the complainant has permitted them to be annoyed. The annoyance would result only when the receiver is undeceived and no longer believes that he has received a telegram.

Upon the face of the bill it is somewhat difficult to believe that a person who, upon opening the envelope, finds that it is not a telegram, should continue to believe that it was sent by the complainant, and not by the advertiser whose name or goods would necessarily be clearly displayed in order that the advertisement should have value. It can hardly be said that a belief that the complainant was guilty of annoyance to the receiver of the imitation telegram is a natural consequence of the defendant's act in putting the imitation envelopes on the market. Upon discovery of the fact that the pretended telegram was merely an advertisement, the natural conclusion would be that there was no connection with the telegraph company. Though it was stated at the bar that such belief had in fact been held, it would require proof

of repeated instances of this character to rebut the natural presumption that the advertisement would entirely discharge the complainant from all connection with the sending of the advertising device. The likelihood that an inference would arise in the mind of a person annoyed that the complainant was guilty of participation in this annoyance is followed up by the allegation that the recipients so believing are likely to become hostile to the complainant and to cease to use its service.

It must be admitted that these allegations upon their face, though skillfully phrased, are in substance but little more than inference, based upon inference, and rather far-fetched inference at that. The theory is that a man who receives a bogus telegram will be annoyed upon finding that it is not a telegram, that upon finding that it is not a telegram he will believe that the telegraph company is responsible for his annoyance, and that because of this belief he will not use the telegraphic service of the complainant, but will use some other company instead.

In Cunard Steamship Company v. Kelley, 126 Fed. 610-615, 61 C. C. A. 532, the Circuit Court of Appeals for this circuit had occasion to deal with the question of inferences from inferences, citing U. S. v. Ross, 92 U. S. 281-283, 23 L. Ed. 707; U. S. v. Pugh, 99 U. S. 265, 25 L. Ed. 322; Manning v. Insurance Co., 100 U. S. 693, 25 L. Ed. 761; First Nat. Bank v. Stewart, 114 U. S. 224-231, 5 Sup. Ct. 845, 29 L. Ed. 161. While differing in circumstances, the criticism in these cases of the argumentative process of drawing inferences from inferences seems especially pertinent, in view of the fact that the present bill contains no allegation that any person has actually become so hostile to the complainant as to cease to use its service.

The complainant recognizes the necessity of establishing in this case some actual or probable injury to its property rights. It asserts that the acts of the defendant are calculated to cause irreparable damage to the good will of the complainant's business; and yet, after we have discarded the irrelevant allegations of the bill, the complainant's case, so far as the aspect of loss of patronage is concerned, is in substance this: One who receives defendant's envelope thinks he has a telegram. He opens it, and finds it is not, and that he has been deceived, and is angered. He thinks, in spite of the advertisement, that the complainant is a party to the trick which has been played upon him, and becomes so seriously offended that he will go to the trouble of avoiding the use of the complainant's telegraphic service.

It is further alleged that if the defendant is not enjoined the recipients of the imitation envelopes are likely to be so accustomed to receiving the same that they will no longer give to real telegrams the prompt attention they usually receive, and that genuine telegrams will be either discarded or examined at the addressee's leisure, whereby the complainant's service will be impared.

The suggestion made by defendant's counsel at the argument is pertinent. Telegraphic messages are usually sent by messenger; the defendant's device invariably by mail. This reduces the likelihood of mistake of this character to a minimum.

The substance of the argument is, if the cry of telegram is repeated. when there is no telegram, it will not be heeded when the telegram comes. The logic of Æsop, however, seems hardly applicable to the present case, or to make it at all probable that persons will give no heed to an envelope purporting to contain a telegram, because it is more probable that it is an imitation than a real telegram.

These are the only particulars in which it is suggested that the business associated with the complainant's envelopes is likely to be injured. The bill in my opinion is defective, in that it fails to show that any actual injury to the complainant in these particulars has oc-·curred, though the defendant's envelopes have been upon the· market about a year.

In the absence of actual injury in the past by loss of service or impairment of the attention to be given to its envelopes, the probability of future injury is too weak, and the bill must be regarded as a statement of far-fetched apprehensions which do not seem to be justified as inferences from any facts stated in the bill. It is difficult to believe that any serious apprehension of the impairment of complainant's business is the actual ground for bringing this bill. If the complainant's customers have been annoyed by the character of advertisements printed upon these advertising devices, if they have been put to trouble by being informed that they had received a telegram when there was no telegram but only an advertisement, if they are alarmed at telegrams, or if they are seriously irritated at small things, such as the· momentary deception which would follow the receipt of one of these envelopes, all this may be a reason why the complainant desires to stop the defendant from making them; but it is hardly a reason for believing that the complainant will suffer in its property rights and be subjected to pecuniary loss.

While the complainant may deem it a duty to prevent the defendant from bothering the complainant's customers by this sort of mimicry, it can hardly accomplish this by a bill in equity, which is merely imitative of a bill for the protection of property rights, or for the prevention of pecuniary injury.

I have failed to find in the bill any allegations of an actual obstruction or interference with the complainant's business, or which tend to show that its business is at all likely to be obstructed or interfered with.

Cases may be imagined in· which an unauthorized use of an envelope bearing a name or address which is not that of the actual sender would so probably lead to mistake, confusion, or actual deception as to justify an injunction, even though no actual harm had been done before the filing of the bill. The creation of many opportunities for actual injury to a complainant by such a course might establish a case of threatened injury which equity would enjoin. Such a case, however, is not presented by this bill.

The use of various kinds. of imitative devices, to attract attention, is very common in the art of advertising. As the law does not take too. seriously the mere puffing of goods, and expects the purchaser's· common sense to guard him from statements which in ethics, though

not in law, may be classed as deceitful, so it should hardly give serious regard to such momentary deception as results from the ordinary imitative advertising device. A momentary deception generally causes amusement, rather than gives offense. Its effect as an advertisement depends upon surprise, and thus it is usually but short-lived.

In the law of deceit there is required not merely a false statement; justifiable reliance thereon is also an essential element. A false statement, made with the intent that it shall be immediately discovered to be false, may rob a man of a moment of his attention and may be classed as a good joke or a bad joke, but can hardly be put into the catalogue of legal deceit or legal or equitable fraud.

Upon the facts, as distinguished from the inferences and assumptions, I am of the opinion that, while the defendant's device is broadly imitative of a telegram, the complainant is not affected in any of its property rights in this respect; that so far as there are any imitative features, which might serve to point to the complainant as distinguished from other telegraph companies, the device is not calculated to deceive in the substantial sense in which that term has been used in the law. At most it is calculated to produce a momentary deception of such trivial character that any serious action based upon it prejudicial to complainant would not be a natural and probable consequence of such deception.

The novelty of this bill is admitted by the complainant. This, of course, is not a reason for denying relief, provided it is made to appear that complainant's rights or property are in such substantial peril that they need protection. I have considered, however, whether the complainant might not be able to aid its case by proofs; but we may accept the allegation that many persons have been deceived for the purposes of this demurrer as fully as if the complainant had produced many witnesses to a momentary deception. I have also considered the possible effect of proof that many of the recipients of said envelopes have believed that the complainant had permitted the use of said device; but this, to be of consequence, must be coupled with a finding that because of this belief they are likely to become hostile. I hardly think that proof, unless of the most extraordinary character, is possible that any considerable number of persons have both believed the complainant responsible and have actually become hostile. If such is indeed the fact, complainant may amend its bill by positive allegation to that effect. The allegation that many have so believed is all there is of fact; the likelihood that many will in future so believe and become hostile is a matter which is purely inferential, and which the court can deal with on demurrer.

In disposing of this case it should be said that the deception charged is merely of a momentary character, for the purpose of attracting attention, and that the defendant cannot be said to have contemplated, or to have been under the duty of contemplating or foreseeing, any impairment of the complainant's business, and has not designed to get any of the complainant's trade. So far as the bill states merely the apprehensions of the complainant, I am of the opinion that the

defendant had no reasonable cause to entertain the same apprehensions. That an imitation so slight, so momentary, could produce anything more than a mere trivial annoyance, not amounting to legal injury, it is difficult to believe.

It is perhaps unnecessary to say that it is' not intended to hold broadly that no legal damage is possible from the unauthorized use of' complainant's envelopes or other insignia in connection with telegraphic service, as distinguished from articles of merchandise. The use of a fraudulent badge to attract passengers for coaches was held a ground of liability in Marsh v. Billings, 7 Cush. (Mass.) 322, 54 Am. Dec. 723. Neither is it intended to hold broadly that such imitation is always justifiable, where damage is not pecuniary. Cases may arise which would require the intervention of a court of equity to protect against repeated annoyances of a serious character; but so far as this bill is framed to protect the public from trivial deception, alarm, and such loss of time as may be expended in opening an advertisement, it is without a precedent and I think without merit. So far as it seeks to protect the complainant's good will, I am of the opinion that it fails to show any past impairment or any reasonable anticipation of future impairment.

The only injuries complained of are those which are to occur in the future, and I am of the opinion that, until the complainant has found by actual experience an instance in which its anticipations are fulfilled, the bill is, prematurely brought. In other words, such remote possibilities of injury as are to be inferred from the facts stated in this bill do not constitute such substantial ground as is essential to invoke the intervention of a court of equity.

Demurrer is sustained.