THE OAKLAND.

(Circuit Court of Appeals, Fourth Circuit. March 10, 1917.)

No. 1488.

1. NEGLIGENCE ⬷134(1)—ACTIONS FOR NEGLIGENCE—SUFFICIENCY OF EVIDENCE.
    A finding of negligence cannot be based upon inference, when the evidence is equally consistent with its nonexistence, but must be sustained by some fact legally established.
    [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 267.]

2. NAVIGABLE WATERS ⬷26(3)—OBSTRUCTIONS—SUIT FOR INJURY TO VESSEL.
    Evidence held not to sustain a finding that a submerged pile in a navigable stream, upon which it was claimed that libelant's launch struck and was sunk, was placed and left there by respondent.
    [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 152–166.]

    Woods, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit in admiralty by William E. Wingate, owner of the gasoline launch Oakland, against the Anderson Lumber Company. Decree for libelant, and respondent appeals. Reversed.

. J. N. Nathans, of Charleston, S. C. (William C. Bissell, of Charleston, S. C., on the brief), for appellant.

W. Turner Logan, of Charleston, S. C., for appellee.

Before PRITCHARD and WOODS, Circuit Judges, and DAYTON, District Judge.

DAYTON, District Judge. Libelant claimed that his launch struck and was scuttled by a submerged remnant of a pile while lying at anchor in Ashley river at Charleston, S. C., by reason whereof it became a total loss. This pile, he claimed, had been driven there by the lumber company some years before and allowed by it to rot away until its remnant became wholly submerged and concealed without either removing it or marking its location. To a decree in his favor the lumber company has taken this appeal.

Three contentions are strongly urged by it in defense and for reversal: (1) That the pile was not driven in an improper place and was not a menace to navigation. (2) That the sinking of the boat was not due to perforation by a pile. (3) If it was, this particular pile had not been placed in the river by it. It is obvious from this statement that the case must be controlled by the facts, and we are not unmindful of the rule that the findings thereof by the trial court must be given every presumption in their favor.

The evidence in this case, from which the facts are to be ascertained, is indefinite and unsatisfactory. The learned trial judge very properly comments upon the strange conflict as to the date when the boat

sank. It is positively insisted by libelant that this date was December 17, 1915, and just as positively by respondent that it was one week later. The positive evidence of each side supports their respective contentions as to the date. Its only importance in the case arises from the fact that the velocity of the wind was greater on the one date than the other; but, in the view we take, this becomes immaterial.

The company's first contention that the pile was not driven in an improper place is not very seriously relied on. It seems to have been in shore from the line established by the government, and yet in, or very near, the river's channel. We may therefore concur in the conclusion of the trial judge that it may have been a menace to navigation.

As to the second contention of the company, that the sinking of the boat was not due to the perforation of the pile, much can be said to support it. The pertinent evidence touching the point, is uncertain and of doubtful character. The two divers are in direct conflict as to whether any perforation at all was made. Conceding there was, it does not follow, however, that it caused the boat to sink. On the contrary, in sinking from other cause, it may have settled upon the pile. It is undisputed that the boat was an old one, loaded with sand and gravel, so that she floated in water that came to within a few inches of her gunwale; that neither of the two men aboard her at the time felt any jar or bump, as of striking, before, or at the time, she began to sink, but, on the contrary, the first revelation of the fact that she was sinking came to one of them by feeling the water come over his feet. The evidence goes to show that, at the time, she ought to have had some 6 or 7 feet of water under her keel and that the pile only penetrated 2 or 3 feet. If this be true, the pile did not cause her to sink. She sank from some other cause and settled on the pile.

All this, however, is matter of doubt and conjecture, and we may well yield any contrary views we may entertain as to it to the judgment of the trial court, and pass on to the third and last contention of the company, that it cannot be held responsible for the placing of the pile at this particular point. As to this we are constrained to disagree with the findings of the learned trial judge. It is clearly shown that piles, from time to time, had been driven along this river front by different lumber companies and possibly others; that in 1898, the harbor commissioners had granted "permission to drive six clusters of piles in front of Anderson Lumber Company's property on Ashley river in 14 feet of water at low tide," not to cross, however, the government's line. It is admitted by the company that under this permission piles were driven by it in front of its property, *but not otherwise*. Several witnesses testify positively to this. On the other hand, the overwhelming weight of testimony is to the effect that the location of this offending pile was opposite the terminus of Broad street, from 60 to 75 feet beyond the company's front or property line. Crouch, the man who drove the piles for the company, testifies positively that he never drove piles where the boat sunk.

[1] Sifting the evidence of libelant, produced in opposition to this positive testimony of the company, in our judgment it resolves itself

to an inference that, because the lumber company did drive piles in front of its property, it must have driven this offending pile, situate some 60 or 75 feet away. Such a conclusion is based upon mere conjecture; and, as said in Midland Valley R. Co. v. Fulgham, 104 C. C. A. 151, 181 Fed. 91:

> "Conjecture is an unsound and unjust foundation for a verdict. * * * Substantial evidence of the facts which constitute the cause of action * * * is indispensable to the maintenance of a verdict sustaining it."

Bailey on Personal Injuries, § 1672 et seq., lays down the rule applicable, when the evidence is capable of two different views being drawn from it, thus:

> "When the evidence is equally consistent with either view—the existence or nonexistence of negligence—it is not competent for the judge to leave the matter to the jury. The party who affirms the negligence has failed to establish it. This is a rule which never ought to be lost sight of. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established."

The rulings of the Supreme Court in Manning v. Insurance Co., 100 U. S. 693, 698, 25 L. Ed. 761, and U. S. v. Ross, 92 U. S. 281, 284, 23 L. Ed. 707, fully sustain these principles.

[2] In this case, if the libelant asks us to infer that, because this offending pile was on a line with those driven by the company in front of its property, although 60 or 75 feet beyond its property line, the company must have driven it there, the company, on the other hand, may just as reasonably demand that we infer that it did not exceed the permission given it, had no use for such a pile in such a place beyond its premises, and did not therefore drive it there. In such case the rule we have quoted must apply. The libelant, with the burden of proof upon him, has failed to prove the substantial facts from which his inference can *alone* be drawn to the exclusion of the other. But the case for respondent is stronger. It has produced positive proof that piles were not driven by it where this vessel went down.

The decree of the court below must be reversed, and the cause remanded, with instructions to dismiss the libel.

Reversed.

WOODS, Circuit Judge (dissenting). The District Court held: (1) That the launch Oakland was sunk by penetration of a submerged pile while at anchor in the waters of Charleston harbor. (2) That the submerged pile was a menace to navigation which could not be guarded against by reasonable care. (3) That the pile was negligently placed and left as a menace to navigation by the Anderson Lumber Company.

I cannot assent to the conclusion of the majority of this court that the third finding of fact is based on conjecture. It is true that the pile was not off the Anderson Lumber Company's property, but was off the terminus of Broad street, which is a boundary of the lumber company's land. It is also true that there was testimony that the pile on which the launch sunk was not driven by the Anderson Lumber Company, and that other persons had driven piles in the vicinity. But, on

the other hand, the testimony taken as a whole tends to show that im-mediately after the accident some of the witnesses who observed the wreck and were familiar with surrounding conditions conversed about the pile as one of those of the Anderson Lumber Company. What is more important Steinmyer, an apparently disinterested witness, tes-tified that he had lived in the vicinity all his life, and that the Ander-son Lumber Company had driven piles in that neighborhood, and that no other person had. The matter is thus well stated by the District Judge:

"The evidence as to the placing of the pile there by the respondent is only circumstantial, as from the nature of things in this case it seems only possi-ble to be. The respondent is shown to have had leave to drive piles in this neighborhood; it is shown to have driven piles in the immediate neighbor-hood; no one else by any sufficient testimony is shown to have driven piles there, and on taking the testimony as a whole the only reasonable inference to be drawn from the preponderance of the testimony is that the pile in question was driven by the respondent."

The District Judge had not only the advantage of seeing and hear-ing the witnesses, but in addition the advantage of long familiarity with Charleston harbor and the methods of those who use its waters. I am unable to agree that the conclusion of the District Court is op-posed to the decided preponderance of the evidence.