**UNITED STATES v. WILLS and five other cases.**

Circuit Court of Appeals, Third Circuit.
November 19, 1929.

Nos. 4106–4111.

John M. Henry and B. B. McGinnis, both of Pittsburgh, Pa., for appellants.

John D. Meyer, U. S. Atty., and Jos. A. Richardson and Ralph H. Smith, Asst. U. S. Attys., all of Pittsburgh, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The government suspected that the National Prohibition Act was being violated in the City of Pittsburgh. It instituted an investigation which revealed not only numberless violations of the act but (with varying certainty) combinations or conspiracies to violate the act entered into by politicians, police officers, wholesale bootleggers and petty retail dealers on an elaborate scale, indeed more elaborate than that of the conspiracy in Wyatt v. United States (C. C. A. 3rd.) 23 F.(2d) 791, yet with a like purpose to put the several areas covered by their operations outside the National Prohibition Act and make them safe places for the distribution and sale of illicit liquor. The operations were so many and so complicated and the relations of those who in one way and another participated in them were so varied that the government in prosecuting the offenders was confronted by a legal situation correspondingly confused, and was compelled (as it turned out) to obtain several indictments charging the same or different offenses (as the case may be) and before final conviction of some defendants was forced to enter nolle prosequi as to others, suffer directions of acquittal of a number, and re-try some who had escaped on directed verdicts. These and succeeding appeals are the outcome of convictions under indictments found after acquittal under a previous indictment.

Quite naturally there arises the question—the important and only serious one in the case—whether the defendants had been put in jeopardy a second time and whether accordingly their pleas of autrefois acquit should have been sustained.

It becomes necessary to state the situation with more particularity. This we shall do as briefly as possible.

In June, 1928, seventy-three persons, including the defendants, were indicted for conspiracy to violate the National Prohibition Act. The indictment contained four counts, the object of the conspiracies being sale, transportation, possession and the manufacture of intoxicating liquors, respectively. The allegations of each count were clear and specific with reference to the conspiracy charged and its object, accompanied with a statement of many overt acts. The four conspiracies thus charged were alike except as to the particular provisions of the law to be violated and as to the overt acts stated. For this reason court and counsel fell into the habit of referring to the four conspiracies as "the conspiracy." For convenience in holding the main thought we shall do likewise.

The case is known as United States v. Abbott, et al. Before the trial in November of the same year the majority of the defendants pleaded not guilty, a small number pleaded nollo contendere, and a still smaller number pleaded guilty. At the end of the trial, in which it should be remembered that all defendants were being tried together for a huge conspiracy with manifold ramifications, the learned trial judge, evidently having in mind the law of Wyatt v. United States, supra, said to the jury:

"You have, during the term of service here, heard the testimony indicating a large number of violations of the National Prohibition Law. The charge in the present case, however, is not that the defendants were guilty of substantive offense against that Act, but that they conspired and agreed together to act in concert for the purpose of violating that law. The Government has introduced testimony here which they believe would be sufficient to convict certain of the defendants of conspiracy to violate the National Prohibition Law, in a manner, all the details mentioned in the indictment. *The trouble, however, is that the testimony does not show sufficiently as the Court believes, that the conspiracy charged by the indictment was entered into by the defendants. On the other hand, it shows a number of conspiracies between different groups, and without any connecting link between different groups.* Therefore, the

Court believes it is its duty to charge you as a matter of law that it is your duty to return a verdict of Not Guilty as to each of the defendants on trial in the present case."

The jury by its verdict found "the defendants not guilty under binding instructions by the court."

To meet the situation thus clarified, a Grand Jury, in February, 1929, brought in true bills against certain groups of the individuals (including the appellants) who were defendants in the previous indictment, which for convenience we shall call the "first indictment." These indictments contained six counts for conspiracies to sell, transport, manufacture, possess, furnish and deliver intoxicating liquor. To the three indictments here concerned, which we shall call the "second indictment," the defendants filed pleas in bar setting forth their acquittal on the first indictment and alleging double jeopardy. Before the opening of the trial these pleas were determined and on each plea the government later moved for a directed verdict in its favor. The court, holding that in the first trial there was a material variance between the allegata and the probata and that, as the record did not disclose the offenses charged in the second indictments to be the identical offenses charged in the first, the acquittal of the offenses first charged was not a bar to a new trial for different offenses next charged, granted the motions. On these pleas the jury rendered a verdict accordingly, and later entered a verdict of guilty under certain counts on the facts.

Whether the ruling of the court was right or wrong depends primarily on whether the acquittal on the first indictment was by reason of a material variance, as the government contends, or whether, as the defendants maintain, it was by reason of a failure on the part of the government to prove its case as pleaded; the substantial difference between the two contentions in law and the very practical difference as it affects the defendants being that in the first instance the acquittal does not operate as a bar to subsequent indictment and trial while in the second instance it does so operate.

There is no dispute about the law; the trouble is with its application. In brief, a variance in a criminal case is an essential difference between an accusation and the proof, best illustrated where one crime is alleged and another proved, and the variance to be material must be such as to mislead the defense and expose the defendant to the injury of being put twice in jeopardy for the same offense. Woods v. State, 22 Okl. Cr. 365, 211

P. 519; 16 Corpus Juris, 243, and cases cited. A test of a material variance is whether the offense alleged in a second indictment is the same as that alleged in the first. Accordingly, a plea of autrefois acquit must be upon a prosecution for the identical offense. "It must appear that the offense charged, using the words of Chief Justice Shaw, 'was the same in law and in fact. The plea will be vicious if the offenses charged in the two indictments be perfectly distinct in point of law, however nearly they may be connected in fact.'" Burton v. United States, 202 U. S. 344, 380, 26 S. Ct. 688, 698, 50 L. Ed. 1057, 6 Ann. Cas. 362.

■ Jeopardy implies an exposure to a lawful conviction for an offense of which a person has already been acquitted. Brown v. City, 196 Ala. 475, 71 So. 672, but "a former acquittal is no bar to a subsequent prosecution unless (this is another test) the accused could have been convicted upon the first indictment upon proof of the facts averred in the second." 92 Am. St. Rep. 107c; Flemister v. United States, 207 U. S. 372, 28 S. Ct. 129, 52 L. Ed. 252; 16 Corpus Juris, 273. "The criterion (still another test) is not what testimony was introduced, but what might have been, and the determinative feature is whether the facts alleged in one charge would support a conviction under the other," Brown v. City, supra, or, stated differently, whether the same evidence would sustain both indictments. Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153; Carter v. McClaughry, 183 U. S. 365, 22 S. Ct. 181, 46 L. Ed. 236.

■ With this summary of the law, we come directly to the question whether the offenses charged in the first and second indictments in these cases were identical, for it is clear that, if they were the same offense, the trial under the second indictment placed the defendants in jeopardy a second time, and it is equally clear that if the second indictment charged an offense different from that charged in the first indictment the defendants were not twice put in jeopardy.

Turning to the first indictment it appears that the seventy-three defendants were charged by four counts with conspiring to violate the National Prohibition Act in the four respects of sale, transportation, possession and manufacture of intoxicating liquor, and that (taking the count charging conspiracy to sell as an example) the count continued:

"It being the design of said conspiracy and a part of the plan thereof that said intoxicating liquors should be sold in that part of the City of Pittsburgh commonly known as 'The North Side,' and that the sale thereof be better effectuated and facilitated by the granting of exclusive concessions for the sale of such liquors in the 'North Side,' and by conferring what is commonly known as 'Police protection,' and 'Political influence' upon those to whom said concessions have been granted, their assistants and customers, and by promising to warn and by warning all persons actually handling their liquors about the activities of United States Government Agents, and by furnishing and causing to be furnished criminal bail bonds to those persons handling their liquors who shall have been apprehended by United States Government Agents detecting such persons in violations of law committed in furtherance of said conspiracy."

From this averment, following the general allegation of conspiring to violate the National Prohibition Law, it is plain the indictment charged that the defendants conspired to violate the law in a certain way, with a fixed purpose, that is, through the means of exclusive concessions for certain areas protected by police and political influence and encouraged by the promise of warnings of governmental activities and the furnishing of bail bonds in the event of mishaps. Thus the paragraph described and identified the conspiracy pleaded and laid the ground for showing the roles which the different actors played.

On its face this would seem to be an averment of an integral and essential part of the conspiracy as laid, and so evidently thought the learned judge who conducted the trial under the first indictment in the Abbott Case, for he found that the government had proved "a number of conspiracies between different groups" but had not proved the conspiracy alleged which included the plan expressly pleaded as a part thereof. What actually happened was that the government proved sundry small conspiracies but was unable to mold them into the one conspiracy charged because it was unable to connect up by proof the members of the several group conspiracies with one another and with the political and police influence which constituted an essential ingredient of the conspiracy as pleaded. Or, stated differently, it forged the links but failed to join them into a chain. On this failure of proof of the conspiracy charged— the one criminal issue on trial—the learned trial judge, it would seem, properly directed an acquittal, and the ground which he gave for his action was in plain terms a variance.

The indictments which the Grand Jury

found after the collapse of the prosecution for a single comprehensive conspiracy were directed against offenders grouped in the manner revealed by the evidence in the trial on the first indictment and charged simple conspiracies in the ordinary way, differing generally from the first indictment in the personnel of the defendants, number of counts, dates, etc., but particularly in the omission from all six counts of the allegations of the first indictment as to the design or part of the conspiracy (which the government was not able to prove) that concessions for certain areas were given under police and political protection and under the promise of warnings and the furnishing of bail bonds.

A mere comparison of the conspiracy alleged in the first indictment with the conspiracies alleged in the second shows that they were not literally the same and it would seem they were not the same in law. If that be true it would follow that the defendants when tried under the second indictment were tried for offenses there charged for the first time and for that reason their pleas of autrefois acquit were properly denied.

■ Sensing that a comparison of the conspiracies as charged in the two indictments would disclose different offenses and thereby destroy their defense of former jeopardy, the defendants, aside from contesting with the government differences in the number of persons, periods of time, number of counts, overt acts, etc. (with which we shall not concern ourselves), say, that, as the essence of a conspiracy is the unlawful combination to commit some unlawful act, the means by which such an act is to be accomplished need not be set forth in an indictment, United States v. Dennee, 25 Fed. Cas. 819; Proffit v. United States (C. C. A.) 264 F. 299, 302, and that the allegation in the first indictment of design and means of effectuating the conspiracy by political influence, police aid, etc., might have been omitted and should therefore be treated as surplusage and ignored. Grand Trunk Ry. Co. v. United States (C. C. A.) 229 F. 116; Friedman v. United States (C. C. A.) 276 F. 792. Of course if the doings recited in this paragraph of the first indictment, expressly declared a "part" of the conspiracy, be stricken out or ignored as an element of the crime, thus cutting in twain the offense charged, what is left is a simple ordinary conspiracy to violate the National Prohibition Law and is, except for the difference in the number of persons involved, the duration of the conspiracies and the overt acts, substantially the offense charged in the second indictment. But are the averments of

the quoted paragraph surplusage, and can we ignore them and in that way bring about the identity of the offenses essential to the defense of former jeopardy? It is true, as the defendants urge, that the act of conspiring is the essence of the crime and not every detail of the conspiracy need be set forth in the indictment, but it is equally true that the conspiracy must be charged in a way to identify it and conspiracy may, and usually does, embrace something more than a mere agreement to violate a law somehow, somewhere, some time. Conspiracy is a thing of substance, not a pale abstraction. It must be pleaded with an identifying particularity that will protect the defendants from a second trial for the same offense. The applicable law on the subject of surplusage in pleading such a crime was epitomized by Judge Morris in United States v. Eisenminger (D. C.) 16 F.(2d) 816, 820, as follows:

"Undoubtedly there is a general rule of law that all unnecessary words may be rejected as surplusage, if the indictment would be good upon striking them out. But that rule is not an unqualified one. An interwoven limitation upon the operation of that principle is that, if the immaterial averments are in any sense descriptive of the identity of what is essential, then they cannot be rejected as surplusage. Wharton's Criminal Ev. § 138. In U. S. v. Howard, Fed. Cas. No. 15,-403, Mr. Justice Story said: ' * * * No allegation, whether it be necessary or unnecessary, whether it be more or less particular, which is descriptive of the identity of that which is legally essential to the charge in the indictment, can ever be rejected as surplusage.'

"This limitation to the general rule is well illustrated by State v. Norkewicz, 3 Pennewill (Del.) 299, 51 A. 601. There the indictment was for the embezzlement of money. The statute provided (Rev. Code 1852, c. 153, § 1): 'It shall be sufficient to allege the embezzlement to be of money without specifying any particular coin, or notes circulating as money. * * *' The kind of money embezzled was stated in the indictment but not proved at the trial. Upon motion for a directed verdict, the court held that, the kind of money having been specified, it became a material part of the averment, could not be rejected as surplusage, but must be proved as laid, and directed a verdict for the defendant. The object of an alleged conspiracy is that which identifies and describes the particular unlawful agreement or conspiracy with which the defendant stands charged. No part of that description may be ignored as sur-

plusage. It must be proved as laid. Rabens v. United States, 146 F. 978 (C. C. A. 4)."

Subscribing to this law and citing the Eisenminger Case and other cases, the Circuit Court of Appeals for the Eighth Circuit in Butler v. United States, 20 F.(2d) 570, 573, stated the rule much in the same way when it said that where allegations are "a necessary part of the description of that particular offense, and the rule is that, where words are employed in an indictment which are descriptive of the identity of that which is legally essential to the charge in the indictment, such words cannot be stricken out as surplusage." 31 Corpus Juris, 846; Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 29 L. Ed. 1153; Carter v. McClaughry, 183 U. S. 365, 22 S. Ct. 181, 46 L. Ed. 236.

█ The granting and operation of concessions to violate the prohibition law under political influence and police protection, expressly made a part of the conspiracy charged in the first indictment, cannot be looked upon and ignored as immaterial averments. They were without doubt essential to a proper identification and description of the particular conspiracy which the indictment charged and which the learned trial court in the first case held had not been proved. Evidence of the other conspiracies later charged would not prove that conspiracy, and evidence of that conspiracy, were it procurable, would not prove the other conspiracies. It follows inevitably that the conspiracies in the two indictments were different and it follows with equal certainty that when the government by the first indictment charged one conspiracy and proved others it did more than fail to prove the conspiracy charged; it proved other conspiracies not charged and thus created a variance which was complete in the technical sense and material in the sense of the law.

█ The defendants cannot escape conviction under the second indictment unless there is substance in their last contention which, as we understand it, is that should it be found that the conspiracies charged in the two indictments are different, the conspiracy alleged in the first is so large and comprehensive that it includes the conspiracies charged in the second and, if this be so, relying upon familiar law, they say that if they could have been convicted of the minor offenses at the trial on the major offense, their conviction or acquittal of the major offense protects them from prosecution for the minor ones. Wharton's Criminal Pleading and Practice (8th Ed.) 320, § 466; Murphy v. United States (C. C. A.) 285 F. 804. But conviction of defendants for the minor offenses is the very thing which the trial court held could not happen in the trial on the first indictment charging the major offense and for that reason it directed the jury to acquit them not of the minor offenses but of the major offense, and left the law to take its course with respect to offenses not pleaded or tried. Though differing in gravity and consequences, all conspiracies are of the same rank in the eye of the law and because one involves a smaller number of offenders than another it does not for that reason become a lesser crime which is protected from prosecution by conviction or acquittal of a larger number involved in a like crime. That is very different from a case in which a minor crime is necessarily and legally embraced within a major crime, where, for instance, a person in indicted for assault with intent to commit murder and after conviction and acquittal is indicted for the assault and battery which entered into the first offense. These crimes are different in rank. It is in such case that acquittal of the greater crime operates as a bar to prosecution for the lesser crime.

Aside from this general discussion affecting all defendants we have given attention to the assignment of error filed by McLaughlin which raises the question whether the evidence discloses separate conspiracies of two groups of defendants and calls for decision under the Wyatt Case, supra. We find nothing substantial in this assignment of error.

The judgments of the District Court are affirmed.