### MARCANTE et al. v. UNITED STATES.
### No. 334.

Circuit Court of Appeals, Tenth Circuit. April 17, 1931.

C. R. Ellery, of Cheyenne, Wyo. (H. S. Ridgely, of Cheyenne, Wyo., on the brief), for appellants.

Albert D. Walton, U. S. Atty., of Cheyenne, Wyo.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The appellants were charged with a conspiracy to violate the National Prohibition Law. The question in the case is whether there was proof of the single conspiracy charged, or whether the proof disclosed two or more separate conspiracies.

The indictment charged 29 named defendants, together with "others to the Grand Jurors unknown," with conspiring to manufacture, transport, possess, and sell intoxicating liquors. Overt acts of manufacture, sale, and bribery of public officials are alleged to have been committed in twelve separate localities, by one or more of the defendants, at various dates between November 1, 1926, and September 8, 1928. It is charged that one Irving, state commissioner of law enforcement, authorized one Ader to solicit and accept bribes from liquor manufacturers and sellers in "the several cities and towns of Wyoming." Generally speaking, the indictment charges the other defendants with having entered into this state-wide conspiracy at different times, in different localities, and with having violated the liquor laws under a promise of protection.

The trial court overruled a demurrer to the indictment, and this ruling is assigned as error. The trial court was right. There is no doubt that there can be a conspiracy to

violate the liquor laws in a dozen different localities; such a conspiracy may be a continuing one; actors may drop out, and others drop in; the details of operation may change from time to time; the members need not know each other, or the part played by others; a member need not know all the details of the plan or the operations; he must, however, know the purpose of the conspiracy and agree to become a party to a plan to effectuate that purpose. A conspiracy is bottomed on an agreement to accomplish an illegal act, and without such agreement there can be no conspiracy; a conspiracy "is a partnership in criminal purposes." United States v. Kissel, 218 U. S. 601, 31 S. Ct. 124, 126, 54 L. Ed. 1168; Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136; McDonnell v. United States (C. C. A. 1) 19 F.(2d) 801; Allen v. United States (C. C. A. 7) 4 F.(2d) 688; Rudner v. United States (C. C. A. 6) 281 F. 516.

On the other hand, there may be two or more conspiracies in the same state to violate the same law. If such be the case the government may not convict all the members of all the conspiracies under a charge of membership in one large conspiracy. To do so is to ignore the facts. In United States v. Wills (C. C. A. 3) 36 F.(2d) 855, 857, it appeared that the trial court had, on a prior trial, directed a verdict of acquittal under an indictment charging membership in a comprehensive conspiracy. The defendants were re-indicted under a charge of a smaller conspiracy to commit the same overt acts, and were convicted. There was a plea of autrefois acquit; the Court of Appeals dealt at length with the subject, sustained the convictions, and among other things said: "What actually happened was that the government proved sundry small conspiracies but was unable to mold them into the one conspiracy charged because it was unable to connect up by proof the members of the several group conspiracies with one another and with the political and police influence which constituted an essential ingredient of the conspiracy as pleaded. Or, stated differently, it forged the links but failed to join them into a chain."

The same Court, in Wyatt v. United States, 23 F.(2d) 791, 792, cert. denied 277 U. S. 588, 48 S. Ct. 436, 72 L. Ed. 1002, said: "When, as here, one large conspiracy is specifically charged proof of different and disconnected smaller ones will not sustain conviction; nor will proof of crime committed by one or more of the defendants, wholly apart from and without relation to others conspiring to do the thing forbidden, sustain conviction. Terry v. United States (C. C. A.) 7 F.(2d) 28, 30; United States v. McConnell (D. C.) 285 F. 164, 166."

The Ninth Circuit, in Terry v. United States, 7 F.(2d) 28, 30, in reversing a conviction because one conspiracy was charged and two were proven, quoted with approval from United States v. McConnell (D. C.) 285 F. 164, as follows: "If, however, the charge of conspiracy in the indictment is merely that all the defendants had a similar general purpose in view, and that each of four groups of persons were co-operating without any privity each with the other, and not towards the same common end, but toward separate ends similar in character, such a combination would not constitute a single conspiracy, but several conspiracies, which not only could not be joined in one count, but not even in one indictment."

Of the 29 defendants indicted, 23 were brought to trial; the government dismissed as to 11, the trial court directed a verdict as to 7, and the jury convicted 5, among them Irving, the commissioner of law enforcement for the entire state, who has not appealed. The evidence disclosed that Mike Bell and Schmitt operated a still at Kirby, a small place near Thermopolis, and paid $1 a gallon to the "State Law Enforcement Department" for protection; that Bell also sold liquor at Thermopolis; that either Schmitt or his wife collected from other bootleggers in Thermopolis and paid the money to Irving or to Ader, his representative. There was evidence that Ader, by code messages, kept the Schmitts advised of the whereabouts of the federal officers.

As to Marcante, Redmon, and Alfonso, the evidence disclosed that they were distillers originally operating at Kemmerer, and later at Red Canyon ranch about ten miles from Thermopolis; that they operated in a large way, and were undisturbed for a long period. The government's raid of their still was tipped off. Irving demanded the liquor seized on the raid, and made away with it. Ader told Mrs. Schmitt that a still was going to open in Red Canyon, before it was opened. There was an admission by a coconspirator who was not indicted that the operators at the still at Red Canyon were paying the "state" or the "law" a dollar a gallon for protection. Ader, who was not an officer, had in his possession an officer's badge.

There is no evidence that Bell and his associates were connected in any way with

Marcante and his associates. Unless it can be found from the above facts, there is no evidence that Bell knew that Marcante or any one else was paying Irving for protection, or that Irving was protecting others for pay. The purpose of the conspiracy, as far as Marcante was concerned, was solely that of manufacturing whisky in Red Canyon under protection; and the sole purpose of Bell was to manufacture and sell whisky in or near Thermopolis under protection. There is no evidence that (1) either group of defendants knew that any conspiracy existed other than the one between that group and Irving; or (2) that their group had any part in carrying out the purpose of any other conspiracy.

At the close of the government's evidence, each defendant separately moved for a directed verdict on several grounds, among them the ground that the evidence did not prove that any of the defendants were a part of the comprehensive conspiracy charged. The trial court denied the motions; exceptions were saved, and these rulings are assigned as error.

The evidence is conclusive that each of the appellants is guilty of flagrantly violating the National Prohibition Law (27 USCA). But, for reasons of its own, the government has not seen fit to charge them with such violations. There is direct evidence that Bell paid Irving for protection, and that a conspiracy existed between Bell and Irving to violate the prohibition laws. There is circumstantial evidence, although sketchy, that Marcante also conspired with Irving. But the government did not see fit to charge the appellants separately with the two conspiracies disclosed by the evidence. The government charged appellants with membership in a conspiracy, the purpose of which was to engage in a general plan to violate the liquor laws in a state-wide way. Does the evidence disclose (1) that Irving conspired with any one, as for example, Ader, to accomplish such purpose; and, if so, (2) that the appellants knew of that conspiracy and joined in the plan to accomplish it?

We cannot find any evidence that the appellants knew of any such general conspiracy between Irving and Ader, even if it be conceded that there is evidence that Irving was engaged in a broad single conspiracy rather than several individual ones. Nor can we find any circumstances from which a jury might legitimately find that Marcante, or Bell, had any other purpose in mind than that of carrying on their own individual op-

erations under a promise of protection. It is elementary that the government need not prove all it alleges; and these convictions would not fall if the government had proven a membership in a single conspiracy to violate the law in eleven, or six or three of the twelve localities alleged. The difficulty is that the proof discloses nothing except one group conspiring with Irving to sell liquor in one locality; another group conspiring with Irving to manufacture liquor in another. Two conspiracies not alleged are proven, and there is no proof of the single conspiracy alleged.

The proof does not bring the case within the scope of Allen v. United States, supra. In that case a conspiracy between officers of the law to sell protection throughout the town of Gary was first established; there was proof that other defendants, knowing of such general conspiracy, entered therein. Furthermore, the practice of submitting to a jury, in one trial, the question of the guilt of thirty or fifty citizens, where the testimony as to each is different, is not to be encouraged. It is extremely difficult for an experienced trial judge to trace the skeins of scattered testimony to so many individuals; with inexperienced jurors, such complicated testimony is too apt to become but a confused jumble, and a verdict too apt to represent an impression that the defendants are guilty of something, with little reference to the crime with which they are charged.

The judgments are reversed.