PARNELL v. UNITED STATES.

HAYS v. SAME.

Nos. 601, 602.

Circuit Court of Appeals, Tenth Circuit.
Aug. 1, 1932.

On Rehearing April 10, 1933.

COTTERAL, Circuit Judge, dissenting on rehearing.

L. M. Gensman and J. H. Cline, both of Lawton, Okl. (W. C. Stevens, of Lawton, Okl., on the brief), for appellants.

Herbert K. Hyde, U. S. Atty., and D. E. Hodges, Asst. U. S. Atty., both of Oklahoma City, Okl.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.

Appellants, Dorsey Parnell and Gordon Hays, seek a reversal of convictions upon an indictment charging them and twenty-seven others with conspiring to manufacture and deal in whisky, in Tillman county, Okl., continuously from June, 1929, to October 7, 1930. Five of the defendants were not apprehended; seventeen pleaded guilty; seven were tried, and of those there was a disagreement as to P. V. Ruch; Jake Streiber, Lee Slade, and John C. Bellah were acquitted; Jake Bock and the appellants were found guilty.

The indictment charges that the conspiracy was formed in Tillman county, Okl. Details are added as to the means of consummating it. It is alleged that county officers —P. V. Ruch, county attorney; Charles Wages, the sheriff; Bud Walls, deputy sher-

iff; and R. S. Rogers, a constable—were parties to the conspiracy and were for protection money to co-operate and assist in the illegal whisky transactions; that Parnell, Bock, Hays, Streiber, and others were to own and operate a large still on the farm of Holmes Tidwell, that he was to receive $250 a month, the officers were to receive $400 a month, and Walls and Rogers were to be the collectors from all the liquor establishments in the county. Certain persons named were to make the sales at various places in the county and others were to operate the stills thereon. Five overt acts are alleged, one of them being that on December 20, 1929, Parnell, Bock, Hays, and Streiber possessed a 1,200-gallon still on the Tidwell farm in the county.

The appellants complain that they were denied a bill of particulars. It appears to have been ordered but furnished only to other defendants. The refusal to make or enforce the order in favor of the appellants affords no ground of reversal. The allowance of a bill of particulars rests generally in the discretion of the court, unless such discretion has been abused. Wong Tai v. United States, 273 U. S. 77, 47 S. Ct. 300, 71 L. Ed. 545. The indictment clearly apprised the defendants of the facts relative to the conspiracy and enabled them to prepare their defense. There was no abuse of discretion in the ruling of the court.

The appellants do not claim that the indictment charges more than a single conspiracy. But they insist it was error to overrule their motions for directed verdicts on the two grounds, that the evidence proved separate and distinct conspiracies; and, in any event, there was not sufficient evidence of their guilt. But if there was only one conspiracy and the appellants were parties to it and there was the overt act to make it effectual, the convictions were justified. Marcante et al. v. United States (C. C. A.) 49 F.(2d) 156; United States v. Wills (C. C. A.) 36 F.(2d) 855.

The contentions impose on us the burden of reviewing the evidence. It is too elaborate to be recited in detail, and it will suffice to notice material portions of it. The testimony of Bud Walls, one of the defendants who pleaded guilty, covers most of the transactions. He was a deputy of Sheriff Charles Wages; R. S. Rogers was a constable; P. V. Ruch was county attorney. All were officers of Tillman county, Okl. We proceed with Walls' account.

Walls and Rogers first agreed upon making collections from gambling devices and

division thereof four ways. Rogers said, "I can take care of the sheriff." Walls said, "I can get to the county attorney." He said to Rogers: "Let's stop this little five-and ten-dollar stuff with gambling games; let's get into something bigger; if you are going to make money it is as bad to make little money as big money." And Rogers agreed.

Then follows a narration of transactions consisting of a systematic plan for obtaining money from liquor violators in exchange for protection given to them in the illicit business of operating whisky stills and selling the product at various places in Tillman county.

These parties first obtained a warrant for the search of a place where Elmer Couch and Blackie Noel kept a quantity of whisky and beer. Walls collected $50 from Noel. He said the matter was talked over with Ruch, and he arranged to pay Ruch one-fourth of the protection money collected, and to pay half to Rogers, who was to divide with the sheriff. He divided the $50, giving Rogers $25 and Ruch $12.50, and kept $12.50.

They next forced the Robisons, who had three stills, to pay them money and collected on an average of $200 a month for several months. It was likewise divided. These parties were arrested by other officers. Some of them were punished and in some instances releases were obtained for them by Walls and Rogers.

Couch introduced Walls to Jake Bock in November, 1929, near the Red River bridge. John Bellah came to Walls and asked to open up a still in the county for Bock and Parnell. Walls first declined on account of their associates. Later, he agreed to let Bock open up for $400 a month, on terms none of the whisky was to be sold in Tillman county. Bock paid Walls the $400, half of which Walls turned over to Rogers for him and the sheriff, and he paid Ruch $100 out of the collection. In pursuance of the arrangement, the still location was made on Tidwell's farm. Walls drove with his wife to the place and viewed the still, which was then fired up. Bock and Streiber were there. In about ten days Walls was at this still again. Bock told Walls he had thirty days to serve at Hobart, and he would let Dorsey Parnell, his partner, take charge of his place, and he introduced Parnell to Walls, and the latter introduced him to Rogers, saying, "Here is Dorsey Parnell; the one Jake (Bock) was talking about," and Parnell said, "We will get along all right." The next payment for the still, $400, was made to Walls in December. His

wife was there. Walls called Rogers to his home and gave him $200 and Ruch $100.

Later, that still was raided. Brown, a negro, also called Cuba, had given the information about it. Ruch said he would have to file on Bock and on Tidwell. Walls talked with Bock, in Ruch's presence, and said something had to be done for him, and he talked also with Attorney Wilson. Ruch said the negro could beat the case and they must get rid of him. Later, Walls asked Bock to tell the county attorney and Rogers what he was paying, and he answered $400 a month. Bock said the negro's bond was $750. Ruch offered to arrange for a cash bond of $375, and Bock said he would go better than that and put up $400. Bock gave Walls $50 as a fee and said the negro would not be there.

Walls next saw Parnell at Chickasha in January. Walls got drunk there and was put in jail. Parnell signed his bond. Walls and Ruch later attended the Pottawatomie county whisky trial at Oklahoma City to get pointers. At Chickasha, Ruch and Walls met Dorsey Parnell and Gordon Hays, whom Parnell introduced. Parnell told Ruch that Cuba was taken care of, and he had got or would get Cuba out of the county. Cuba disappeared.

Bill Campbell wanted to sell whisky. Walls and Rogers refused his request, but nevertheless he operated a place. He was put in jail, but Walls had him released through Ruch and Rogers. Walls collected from Campbell $100 a month and divided it with Ruch. Others paid tribute and it was divided. There were collections from them and in some instances they were jailed.

Rogers' testimony was largely corroborative of that of Walls, and especially with regard to the agreement, the collections, and the division of money. He said two payments were made to him on the Bock and Parnell still. He also testified to the making of the cash bond for Cuba. At Lawton, he met Parnell, who said Bock wished to talk with him (Rogers). Rogers talked from Indiahoma with Bock, who asked him to arrest a negro who had stolen Parnell's car, but he mistakenly thought Rogers was at Frederick. Parnell came and talked to Rogers, saying the negro had stolen his car, was supposed to leave, would leave now, and he was going to take him to Chickasha.

Wages testified to receiving money from Rogers on several occasions, two or three hundred dollars all told, but was not advised as to the source. When he was handed money

in November, 1929, Rogers told him, "there is going to be a big still come into this county." Wages turned the negro out on a cash bond. He had talked to the negro at the jail. Wages had a warrant for Tidwell, but he did not arrest him, as he was supposed to be protected. He came in later. In one instance, Rogers gave him $100 and said, "That still is here," and when he asked where it was, Wages was told he need not know.

Mrs. Bud Walls gave testimony for the government. It was corroborative of the testimony of her husband, respecting the collections and the plan on foot.

Holmes Tidwell testified to living on a farm ten miles out from Frederick. He had an arrangement with Bock to be paid $250 a month for running the still. Frank Muse told him they would pay him or some one in Tillman county about $1,000 to build a still there. He told Muse to have them come there, as he needed the money. Bock, Parnell, and Muse came. Parnell and Bock stepped off the building to find out how many barrels of mash it would hold. The deal was made and the still was set up. Then Gordon Hays came and helped to put up the still. He was there two or three days, and Parnell only four or five times. Streiber operated the still, and he hired the negro Cuba, another negro, and a white cook. Bock paid Tidwell $250. Tidwell was later arrested and pleaded guilty.

Mrs. Tidwell testified the still was operated in their barn, and it remained there about three weeks. Parties came there in November, 1929. She identified them as Bock, Streiber, Parnell, and Hays. She saw Parnell and Hays come in and out of the barn with different things.

Frank Muse testified he declined to allow Bock to put a still on his place. He referred them to Tidwell. He met Bock and Parnell later at Frederick and drove with them to the Tidwell place, where they talked with Tidwell. They walked off for a talk. Parnell at first stayed in the car, but afterwards got out and "walked around there."

C. E. Haas, the court clerk of Tillman county, testified that in a case against Will Brown, Bock, Lewis Ward, and Tidwell, the bonds of Bock and of Brown, the negro, were made by Parnell, Hays, and Muse. Two bonds were made for Brown. The second was a substituted cash bond for $100, put up by attorney Wilson. It was forfeited.

The conspiracy formed in the first instance by Walls and Rogers was county-wide in its scope. They were officials of Tillman county, with powers coextensive with the county, and their transactions were carried on irrespectively of places therein. The other principals who joined them were also county officers. It is clear from the evidence that the plot was to be made effectual, when opportunity should arise, at any and all places in the county. Besides, the trial court was careful to charge the jury it was essential that the single conspiracy must be proved or the defendants should be acquitted.

The trial jury was justified in finding the conspiracy was formed as charged. It began by a deliberate agreement. The exactions put on the several liquor violators resulted in nothing more than an entry by them into the conspiracy. In other words, they might operate, if they joined in the corrupt liquor scheme. The evidence centers around the still on the Tidwell farm, and it was within the province of the jury to find that transaction was an overt act in furtherance of the conspiracy. Bellah doubtless knew it was on foot when he applied for the privilege of locating a still on that place and paid the protection money for it. There was no separate plan to conspire with different groups. The law violators when informed of the opportunity contributed and became parties to the liquor program in the county.

The case of Booth et al. v. United States (C. C. A.) 57 F.(2d) 192, following Allen v. United States (C. C. A.) 4 F.(2d) 688, is in point. In the Booth Case, the conspiracy was county-wide. In the Allen Case, it was city-wide. But the controlling principle is the same. It is that persons advised of a central combination become parties to it by co-operating in furtherance of the common object.

The contention that the evidence did not suffice to connect Parnell and Hays with the conspiracy is not well taken. The jury was authorized to believe that part of it favorable to the government.

Bock introduced Parnell to Rogers as the party to take charge of the still while Bock should be in the Hobart jail. Parnell acquiesced in the arrangement. He was active in making bond for the negro Cuba, who had been employed at the still, and in getting him out of the way. He took part in stepping off the building for the still location. He visited the still and was seen there at different times. There was ample evidence to show that he joined in the conspiracy, whereby that still was to be operated for pay to the officers.

The evidence connecting Hays with the conspiracy also supports the verdict against

him. He helped to put up the still. Mrs. Tidwell saw Hays and others there, and going and coming with different things. The court clerk said Parnell, Hays, and Muse made the bonds of Bock and Cuba. It is true Hays might have been a mere employee at the still, or a visitor or patron there, and he might have been a mere friend of Cuba in need. But considering his unexplained activities, it was reasonable to conclude he was a party to the criminal enterprise. The jury had a right to believe that what one of the parties concerned knew was known by all. Zottarelli v. United States (C. C. A.) 20 F.(2d) 795. By a well-settled rule a conspiracy may be shown by circumstantial evidence. United States v. Olmstead (D. C.) 5 F.(2d) 712; Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278; United States v. Wilson (D. C.) 23 F.(2d) 112. The circumstances in evidence, if credited, were sufficient to show Hays had a guilty connection with the conspiracy.

It is assigned as error that there was prejudicial conduct of the United States attorney by offers of checks made to Parnell and Hays on a Chickasha bank, produced by the witness Wyley Jones. The checks were not shown to be competent and the court excluded them and instructed the jury to disregard them. We are not persuaded that prejudice resulted to appellant. The general rule applies that the error, if any, was cured by the action of the court. Remus v. United States (C. C. A.) 291 F. 501.

It is urged there was misconduct of the United States attorney in seeking to have Mrs. Tidwell identify the appellants. But the questions propounded were not more than leading in character. We conclude they were not prejudicial.

As a final assignment, it is contended that there was error in permitting Mrs. Walls and Mrs. Tidwell to testify, when it appeared they were wives of defendants. The husbands had entered pleas of guilty but had not been sentenced. Jin Fuey Moy v. United States, 254 U. S. 189, 41 S. Ct. 98, 65 L. Ed. 214, is cited. It was there decided the rule excluding such a witness from testifying is "based on his interest in the event"; that is, of the trial. In this case, the witnesses had no such interest, as their husbands were not on trial and could not be affected in one way or the other by the testimony. It is absurd to claim the witnesses were incompetent because their testimony might affect the postponed sentences. There is no such rule. Knoell v. United States (C. C. A.) 239 F. 16.

Our conclusion is the trial of the appellants is free of prejudicial error. For that reason the convictions are affirmed.

PHILLIPS, Circuit Judge (dissenting).

I respectfully dissent from the affirmance as to Hays. There is no direct evidence connecting him with the conspiracy, and the circumstantial evidence that he helped to construct the still on the Tidwell farm and thereafter on several occasions was with Parnell at the building where the still was located was not, in my opinion, sufficient to take the case to the jury.

John C. Bellah made arrangements with Walls for Bock and Parnell to operate the still. Bock and Parnell entered into an agreement with Tidwell for the location of a still on the Tidwell farm. The still was known as the Bock-Parnell still. It is significant that Hays was not mentioned or in any wise connected with the transaction which led up to the location of the still on the Tidwell farm. The reasonable inference from all the evidence is that he had no interest in the still, and was connected with it in the capacity of an employee only.

But if, from the circumstances that Hays helped to construct the still and on several occasions thereafter was at the still with Parnell, it could be inferred that Hays was a co-owner with Bock and Parnell, it could not be inferred from the inference of ownership that he was a party to the conspiracy, because a presumption of fact cannot be based on a presumption of fact—an inference cannot be drawn from an inference. Brady v. United States (C. C. A. 8) 24 F.(2d) 399, 403, 404; United States v. Ross, 92 U. S. 281, 283, 23 L. Ed. 707; Manning v. Insurance Company, 100 U. S. 693, 697–699, 25 L. Ed. 761; Looney v. Metropolitan R. R. Co., 200 U. S. 480, 488, 26 S. Ct. 303, 50 L. Ed. 564.

It should be kept in mind that the conspiracy charged was not one between Bock, Parnell, Hays, and Tidwell to manufacture intoxicating liquor, but a larger conspiracy, county-wide in its scope, and that the Government was required to prove the comprehensive conspiracy charged in the indictment. Marcante v. United States (C. C. A. 10) 49 F.(2d) 156.

Ruch, Wages, Walls, and Rogers were the original parties to the conspiracy charged. From time to time others joined in and became parties to such conspiracy. It was incumbent upon the Government to prove that Hays became a party thereto. While the proof may have been sufficient to connect

Hays with a smaller conspiracy, it is my opinion that it wholly failed to connect him with the larger conspiracy charged in the indictment.

## On Rehearing.

McDERMOTT, Circuit Judge.

A rehearing was granted as to Gordon Hays, to give the parties an opportunity to explore more fully the question of the sufficiency of the evidence to sustain the conviction. We have again critically examined this confusing record.

The record discloses ample proof that Hays and Parnell engaged in the operation of a still on the Tidwell Farm, and thereby conspired to violate the prohibitory laws in that manner. The evidence also discloses that Parnell and the proprietors of many other stills in Tillman county were in a conspiracy to violate the prohibitory laws under the protection of county officers, bought and paid for. The evidence thus discloses a county-wide conspiracy, involving the owners and operators of many stills, and many of the county officers; and numerous smaller conspiracies to operate particular stills.

The conspiracy charged in the indictment in this case is the county-wide conspiracy. The conspiracy charged must be proven. Marcante v. United States (C. C. A. 10) 49 F.(2d) 156. The question then is whether there is sufficient evidence to connect Hays with the county-wide conspiracy.

This question in turn resolves itself into the question of whether Hays was a partner of Parnell, or whether he was an employee at the still. If he was a partner of Parnell in the enterprise, there would be justification for a finding that he was a member of the county-wide conspiracy, although the dealings with other members of the conspiracy were carried on by Parnell; for it would be a fair deduction, from the fact of partnership, that each member knew that a part of the partnership revenue was being paid for protection, and acquiesced therein. If, on the other hand, Hays was but an employee at the still, such employment would not support a finding that he was a member of the county-wide conspiracy. If the owners of a half dozen stills conspired to purchase protection from the county officers, it is not reasonable to assume that they took into their confidence, and into the conspiracy, all of the employees at each still.

The evidence in this case discloses the following facts: Hays helped construct and operate the still on the Tidwell Farm. With one Slade, he became a surety on the bail bond of Jake Strieber, who was charged with the violation of the prohibitory liquor laws; he, with Parnell and one Muse, was also a surety on the bond of Jake Bock who was interested in the Tidwell still, and was active in making bond for a negro named Cuba, who had been employed at the still, both charged with a violation of the liquor laws. Ruch, the county attorney of Tillman county, and one of the defendants, and Walls, a deputy sheriff, met Parnell and Hays in Chickasha. Walls testified they had a conversation, but said he did not hear what was said between Hays and Ruch. A part of that conversation dealt with the conspiracy, but the record does not disclose that Hays heard it.

This evidence is consistent with the theory that Parnell and Hays were partners. It is just as consistent with the theory that Hays was merely an employee at the still. As Judge Cotteral said in the majority opinion originally filed in this case, "It is true Hays might have been a mere employee at the still, or a visitor or patron there, and he might have been a mere friend of Cuba in need." A critical examination of the record sheds no light upon the vital question of the relationship of Hays and Parnell. If Parnell and he were partners in the ownership and operation of the still on the Tidwell Farm, the jury might reasonably conclude that both were members of the county-wide conspiracy charged. If, on the other hand, Hays was merely an employee, no such conclusion could fairly be drawn. The facts being consistent with the theory that Hays was either a partner or an employee, the case falls within the settled rule that where the circumstances are as consistent with innocence as with guilt, a motion for a directed verdict should be sustained. McClintock v. United States (C. C. A. 10) 60 F.(2d) 839; Eierman v. United States (C. C. A. 10) 46 F.(2d) 46; Leslie v. United States (C. C. A. 10) 43 F.(2d) 288.

We conclude therefore that the court erred in refusing to direct a verdict in favor of Hays, and the former opinion is modified in this respect, but in this respect only. The judgment against Hays is accordingly reversed.

COTTERAL, Circuit Judge, dissents.