## TELMAN v. UNITED STATES.

### No. 883.

Circuit Court of Appeals, Tenth Circuit.

Nov. 29, 1933.

George R. Craig, of Albuquerque, N. M., for appellant.

Wm. J. Barker, U. S. Atty., of Santa Fe, N. M. (Gilberto Espinosa, Asst. U. S. Atty., of Albuquerque, N. M., on the brief), for the United States.

Before PHILLIPS and BRATTON, Circuit Judges, and SYMES, District Judge.

PHILLIPS, Circuit Judge.

The indictment herein contained ten counts. Each charged that John Telman, Ann Telman his wife, and W. W. McBride, together with others, conspired to commit an offense defined by the National Prohibition Act (27 USCA). The first count charged a con-

spiracy to possess whisky, the second to sell it, the third to deliver it, the fourth to furnish it, the fifth to transport it, the sixth to receive orders for whisky, the seventh to possess property for its manufacture, the eighth to solicit orders, the ninth to maintain a common nuisance, and the tenth to manufacture whisky.

The conspiracies charged were alleged to have commenced about December, 1928, and continued up to and including March 7, 1932.

Telman was acquitted on the third and sixth counts, and convicted and sentenced on the other counts.

The evidence introduced by the Government established the following facts: During the latter part of 1928 Telman discussed with Desidero Montoya the renting of a building thereafter known as the Sandia Club to a friend of Telman's. About one month later the Sandia Club was leased to one Keeter for a period of one year, and was operated by Telman and McBride as a roadhouse until November, 1929. McBride usually tended bar and Ann Telman acted as hostess. Telman admitted guests and entertained them while there.

John and Ann Telman leased a place known as the Duck Pond. McBride paid the rent therefor. They operated this place as a roadhouse in October and November, 1929. McBride, Ann Telman, and Helen Fellers sold whisky there. Telman admitted guests, entertained them, and invited them to return as they departed.

About January 1, 1930, another roadhouse known as the B. & E. Ranch was opened. John and Ann Telman were in charge and lived there. Helen Fellers, at their request, came there to work as a prostitute. At this place there was a bar; McBride and Homer Dilbeck sold whisky; Ann Telman paid the telephone bills, acted as hostess, and sometimes sold liquor. Telman hired Dilbeck to tend bar, clean up, and do other general work about the place. Telman took charge of the receipts. Dilbeck was instructed by Telman not to make any deliveries unless he knew the person ordering the whisky. The B. & E. Ranch was raided in April, 1930, and later padlocked.

Shortly thereafter John and Ann Telman moved to the Del Frate Ranch. They sold whisky at the ranch, and orders for whisky to be delivered were also taken and filled. Dilbeck, who continued to work for Telman, made some of the deliveries.

In January, 1931, one Sutherland at Telman's request came to the Del Frate Ranch, where they entered into an arrangement under which the former was to manufacture whisky and they were to divide the profits equally. Sutherland then went to Silva's Dance Hall, which was being run by Telman, and stayed there until March, 1931, when he moved to the Anaya place. Sutherland ordered a still, an automatic funnel and a filter bag, which were paid for by Telman. When the still arrived Sutherland and Dilbeck set it up on the Anaya place. Telman sent out supplies, and Sutherland manufactured whisky. Four hundred gallons of whisky were taken by Sutherland and Dilbeck to Silva's Dance Hall under instructions from Telman. Sutherland also delivered whisky to Telman at the Del Frate Ranch. In the summer of 1931 Ann Telman reopened the B. & E. Ranch, and there sold whisky. Whisky was there delivered to her by Sutherland, and also by Telman. The B. & E. Ranch was again closed in March, 1932.

At the close of the evidence, counsel for Telman made a motion for a directed verdict. This was denied. Counsel for Telman urge that the court erred in denying the motion for the reason that the evidence fails to show any conspiracy between Telman and any of the other co-conspirators to violate the National Prohibition Act. It is true that there is no evidence of any formal agreement to do the acts charged, but that is not necessary. Conspirators do not put their agreements into writing, nor do they make public their plans. It is sufficient to show that the minds of the parties met in an understanding way so as to bring about an intelligent and deliberate agreement to do the act or acts charged, although such an agreement is not manifested by any formal words. Lawlor v. Loewe (C. C. A. 2) 209 F. 721, 725; Id., 235 U. S. 522, 35 S. Ct. 170, 59 L. Ed. 341; Stafford v. United States (C. C. A. 6) 300 F. 537; Burkhardt v. United States (C. C. A. 6) 13 F.(2d) 841; Goode v. United States (C. C. A. 8) 58 F.(2d) 105; Coates v. United States (C. C. A. 9) 59 F.(2d) 173. A mutual implied understanding is sufficient so far as the combination or confederacy is concerned, and the agreement is generally a matter of inference, deduced from the acts of the persons accused which are done in pursuance of an apparent criminal purpose. It is rarely susceptible of proof by direct evidence, and may be deduced from the conduct of the parties and the attending circumstances. Goode v. United States, supra; Murry v. United States (C. C. A. 8) 282 F. 617; Coates v. United States,

supra; Symonette v. United States (C. C. A. 5) 47 F.(2d) 686.

■ The facts established, together with the inferences to be drawn therefrom, were clearly sufficient to justify the jury in finding the conspiracies to have existed, as charged in the indictment.

Counsel for Telman further assert that the conspiracies charged amount to one large conspiracy beginning in December, 1928, and continuing until March, 1932, and that the evidence, if it established anything, established several small conspiracies; that is, a conspiracy at each one of the places operated, and that they were in no way connected with each other.

■ Where one large conspiracy is charged, proof of different and disconnected smaller ones will not sustain a conviction. Marcante v. United States (C. C. A. 10) 49 F.(2d) 156; Parnell v. United States (C. C. A. 10) 64 F. (2d) 324; Wyatt v. United States (C. C. A. 3) 23 F.(2d) 791; United States v. Wills (C. C. A. 3) 36 F.(2d) 855; Terry v. United States (C. C. A. 9) 7 F.(2d) 28; United States v. McConnell (D. C. Pa.) 285 F. 164. But such is not the case here. The indictment charged continuing conspiracies to violate various phases of the National Prohibition Act commencing in December, 1928, and continuing until March, 1932. The evidence clearly established that Telman, his wife, and McBride were co-operating in an understanding way to violate the National Prohibition Act at the Sandia Club and the Duck Pond in 1929. This was the beginning, and a conspiracy once established is presumed to continue until the contrary appears. Coates v. United States, supra; Hyde v. United States, 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614. Actors may drop out of a conspiracy and others join therein. Marcante v. United States, supra. Telman and his wife were in the conspiracy from the beginning, and were active to the end. McBride was with them until they moved to the Del Frate Ranch. He evidently dropped out at that time. Sutherland comes into the picture early in 1931. The moving from place to place did not put an end to the original conspiracy. That amounted to nothing more than a change of the base of operations. Active co-operation continued. The evidence established one continuing conspiracy, not several disconnected ones.

■ After the court had charged the jury, counsel for Telman requested the following additional instructions. :

"The defendants would like at this time to request the court to instruct the jury that where one charge of conspiracy is specifically charged, in this case, the proof of different and disconnected smaller ones will not sustain conviction.

"I would like to further request the court to instruct the jury that proof of crime committed by one or more of the defendants wholly apart from and without relation to the others conspiring to do the thing forbidden will not sustain conviction.

"We would like to request the court to further instruct the jury that before the jury would be justified in finding the defendants guilty, or either of them, as charged in this indictment, it would be necessary for them to find that the conspiracy existed as charged in the indictment independent of the overt acts proven."

The first requested instruction was properly refused, as there was no evidence to which such instruction could have applied.

The second and third instructions were fully covered by the trial judge in his general charge.

The judgment is affirmed.