## YOUNG v. MONTGOMERY.

[No. 19,931.   Filed June 4, 1903.]

APPEAL.—*Instructions.*—*Joint Assignment of Error.*—Where the correctness of several instructions are jointly challenged in a motion for a new trial, there is no available error unless all of the instructions are erroneous.  *p. 69.*

SAME.—*Instruction.*—*New Trial.*—Error in an instruction must be assigned as a cause for a new trial, or it will not be available on appeal.  *p. 69.*

WILLS.—*Mental Incapacity.* — *Undue Influence.* —*Instructions.*—In an action to contest a will because of undue influence and the testator's mental incapacity, it is not error for the court by proper instructions to withdraw from the jury all questions as to undue influence, where, from the evidence, the conclusion could not have been reached that there was undue influence except by building presumptions upon presumptions.  *pp. 69, 70.*

WITNESSES.—*Heirs or Devisees.*—*Competency.*—*Waiver of Objections.*—Where a party to a suit against a devisee exercises his right, under §510 Burns 1901, and calls and examines the defendant as a witness, such party thereby renders the defendant a competent witness for all purposes.  *pp. 70–74.*

From Shelby Circuit Court; *Douglas Morris,* Judge.

Action by Elizabeth A. Young against Samuel F. Montgomery.  From a judgment for defendant, plaintiff appeals.  *Affirmed.*

*L. F. Wilson, A. J. Williams, R. W. Miller* and *H. C. Barnett,* for appellant.

*H. S. Downey, C. A. Major, Isaac Carter* and *H. C. Morrison,* for appellee.

GILLETT, J.—This suit was instituted by appellant against appellee to contest a testamentary instrument that had been probated as the last will of one Nancy Montgomery, deceased.  There was a verdict and judgment for appellee.  There is but one sufficient assignment of error, and that is based on the overruling of a motion for a new trial.  Elliott, App. Proc., §351.

Young *v.* Montgomery.

Appellant's counsel first complain of the action of the trial court in the giving of instruction number two, whereby the issue was narrowed to the question as to whether the said Nancy was of unsound mind at the time she attempted to execute said instrument. As said instruction is only challenged in the motion for a new trial by an assignment that jointly questions the correctness of fourteen instructions, and as some of them were proper instructions, and not questioned by appellant's counsel, it is evident that the question as to whether instruction number two was correct is not properly before us. *Jones* v. *State,* 160 Ind. 537. The fact that said instruction was made the subject of a separate exception, as shown in the bill of exceptions, will not avail, as the error, if any, must also be assigned as a cause for a new trial. *Cline* v. *Lindsey,* 110 Ind. 337.

Appellant's counsel criticise said instruction because it withdrew from the jury all question as to undue influence. Although, in view of the state of the record, we were not required to consider the question, we have read the evidence, and are prepared to express an opinion upon the point. While undue influence is a relative term, and always to be taken in the concrete, since the influence that it is claimed was undue must have a correlate in the mental condition of the person who attempts to execute the will, yet it must be remembered that the influence that the law denominates as undue must take away the supposed testator's free agency in the particular instance. *Stevens* v. *Leonard,* 154 Ind. 67, 77 Am. St. 446; 1 Jarman, Wills (6th ed.), 66, note. When so tested, we think that the evidence that was introduced in the case before us did not warrant the submission of the question to the jury. There was evidence of some circumstances that it would have been proper to prove in making out a case of undue influence, but there was an utter absence of evidence concerning what would be the center or core of such a case, and, as the conclusion could not have been reached that there was undue in-

fluence except by building presumptions upon presumptions —a wholly inadmissible method of reasoning—we think that the court properly withdrew the issue in question from the consideration of the jury. *United States* v. *Ross,* 92 U. S. 281, 23 L. Ed. 707; *Manning* v. *Insurance Co.,* 100 U. S. 693, 25 L. Ed. 761; *Morrissey* v. *Ingham,* 111 Mass. 63.

While appellant was upon her case in chief she caused appellee to be called as a witness and proved by him that he had lived with his mother (the said Nancy) during the entire time that they were both in life, and as to what real estate appellant had inherited from her father, whose death preceded the death of said Nancy. At a subsequent stage of the trial, appellee offered himself as a witness, and, over the objection of appellant, was permitted to testify as to certain matters that did not directly relate to the mental condition of his mother, or to the subject-matter of his examination while a witness for appellant. It is urged that the witness was incompetent under §507 Burns 1901, and the case of *McDonald* v. *McDonald,* 142 Ind. 55, is cited as to the construction of said section.

Our statute concerning the incompetency of parties, in suits by or against heirs or devisees, to testify to any matter which occurred prior to the death of the ancestor, is a remnant of the common law doctrine concerning the incompetency of witnesses having a legal interest. The modern view is that in the main it makes for the ascertainment of truth to permit all witnesses to testify, but in cases coming within said section and kindred sections the impossibility of contradicting the witness by the testimony of the ancestor furnished a sufficient reason to the mind of the legislature for excluding the testimony of such witnesses as to what occurred prior to the death of the ancestor.

In instances where a witness' incompetency at common law was based on public policy, the rule of incompetency could not be avoided by consent, but the objection of interest seems to have been founded, not on public policy, but

merely upon the supposed improbability of the testimony of interested witnesses. Thus, it was said by Lord Chief Baron Gilbert: "Where a man, who is interested in the matter in question, would also prove it, it rather is a ground for distrust than any just cause of belief; for men are generally so short-sighted as to look to their own private benefit, which is near them, rather than to the good of the world, 'which, though on the sum of things really best for the individual,' is more remote; therefore, from the nature of human passions and actions, there is more reason to distrust such a biased testimony than to believe it." Gilbert, Evidence, 223.

The rule of incompetency because of interest was more relaxed in chancery, and a failure to make the objection seasonably operated as a waiver of it at law. 3 Phillips, Evidence (5th Am. ed.), 97. It is, of course, unnecessary to examine the curious learning upon the subject of interest, but a comparison of the earlier English cases with those of more recent date shows that the observation of Lord Mansfield on the question of interest was justified, that "The old cases, upon the competency of witnesses, have gone upon very subtle ground, but of late years the courts have endeavored, as far as possible, consistent with these authorities, to let the objection go to the *credit*, rath·· than the *competency*, of the witness." *Walton* v. *Shelley*, 1 T. R. 296, 300.

Our statute permits a party to call his adversary and examine him. (§510 Burns 1901), and the question arises as to whether this course does not preclude such party from afterwards claiming that the witness is incompetent on other points. In this connection the adjudications upon the question of interest throw much light. *Morgan* v. *Brydges*, 2 Stark. 279, was an action for an escape. The plaintiff had called the bailiff, who had made the arrest, to prove the fact, there being no return upon the writ. The defendant proceeded to cross-examine the witness, to which

Marryatt, for the plaintiff, objected, and Abbott, J., is reported as saying "that it would be desirable that a sheriff's officer should not be examined in support of his own cause; but that, since he had been called as a witness for the plaintiffs, he was of opinion that he was to be considered as a witness for all purposes."

In *Fulton Bank* v. *Stafford,* 2 Wend. 483, 485, one Mather was called as a witness on behalf of the plaintiff, and he testified to the signatures to the note and bills of exchange in suit. The defendant called him afterwards to prove that such note and bills were accommodation paper. In ruling upon his competency to testify upon the latter subject, the court, on appeal, said: "When a witness has been sworn in chief, the opposite party may not only cross-examine him in relation to the point which he was called to prove, but he may examine him as to any matter embraced in the issue. He may establish his defense by him without calling any other witnesses. If he is a *competent witness* to the jury for any purpose, he is so for all purposes; and the party who originally called him and availed himself of his testimony, can not subsequently object to him on the ground of interest any more than he can impeach his general character. He is estopped from denying his competency as well as his credibility." See, also, *Jackson* v. *Varick,* 7 Cow. 238, s. c., on error, 2 Wend. 167, 19 Am. Dec. 571.

In *Stockton* v. *Demuth,* 7 Watts 39, 32 Am. Dec. 735, it was said, in answer to an objction by the plaintiff that a witness called on behalf of the defendants was interested: "By calling him up and examining him generally as his witness, the plaintiff accredited him as competent and credible, and was afterwards estopped from averring the contrary. * * * The distinction is between producing and swearing the witness generally, and on his *voir dire.*"

In *Floyd* v. *Bovard,* 6 Watts & Serg. 75, the plaintiff called a defendant as a witness, and examined him. At a

subsequent stage of the trial he was called and examined as a witness for the defendants. The witness was distinctly interested, but Gibson, C. J., speaking for the court, said: "The plaintiff himself had called him to prove a part of his case, the witness consenting to be sworn; and had not this been done, he certainly would have been incompetent to testify for his codefendant, and why? Because his interest raised a presumption unfavorable to his credibility, which would not have been rebutted. But did not the plaintiff rebut it when he produced him as a witness worthy of credit, and had the benefit of his testimony? Or did he assert no more than that he was worthy of credit only when he testified against his own interest? The man who is honest enough to declare the whole truth, when it makes against him, will be honest enough to declare no more than the truth in his favor. It would give a party an unjust advantage to let him pick out particular parts of a witness' testimony and reject he rest. But the matter does not rest on principle alone; for it is a familiar rule that a party can not discredit his own witness or show his incompetency."

Under a disqualifying statute substantially like the one under consideration, the question arising as in this case, the supreme court of Colorado said: "Having been called as a witness by the adverse parties and examined by them as a witness upon certain matters pertinent to some of the issues in the case, we think that he was thereby rendered competent for all purposes." *Warren* v. *Adams,* 19 Colo. 515, 521, 36 Pac. 604. This is in accord with the decisions of the Appellate Court of this State. *Gilbert* v. *Estate of Swain,* 9 Ind. App. 88; *Bartlett* v. *Burden,* 11 Ind. App. 419. In the Gilbert case the court, in considering the subject, said: "The policy of the law in precluding an adverse party from testifying when a judgment or allowance is sought against the estate of a deceased person, is to prevent the living from taking an unfair advan-

tage of the estate of the dead.   The law further recognizes
that it may sometimes be to the advantage of the estate, and
conducive to the ends of justice, to permit an adverse party
or incompetent witness to testify; and to this end it has
given to the personal representatives of the deceased the
right to exercise a discretion in making an incompetent
witness competent.   If a party puts an incompetent witness
on the stand, by exercising any power which he possesses
over the witness, he accredits such witness with competency
and renders him entirely competent in the cause, to be used
by either party to the suit."

The enactment in question is a salutary one, but in its
operation the legislative hand is often laid heavily upon
the honest suitor, and we do not think that his adversary
should be accorded the further advantage of compelling
the witness to testify upon points against himself without
incurring the burden of rendering him competent generally.

We have now considered all of the questions upon which
a reversal is sought, and we find no error.   Judgment
affirmed.