## MILLER v FOUST

Ohio Appeals, 9th Dist, Summit Co

No 2358. Decided Feb 21, 1935

Weick, Powers & Mason, Akron, and Slabaugh, Seiberling, Huber & Guinther, Akron, for plaintiff in error.

Burroughs & Burroughs, Akron, and Brouse, Englebeck, McDowell, May & Bierce, Akron, for defendant in error.

## OPINION

By STEVENS, J.

Numerous errors are assigned by defendant, as follows:

1. Error in the rejection of evidence offered by defendant.

2. Error in the admission of evidence offered by plaintiff.

3. That the judgment is against the weight of the evidence.

4. That the judgment is excessive.

5. That the action was not brought within the time limited by law.

6. Other errors apparent upon the face of the record.

The first assignment of error has to do with the refusal of the trial court in this case to permit defendant to testify regarding certain evidence, which was offered by plaintiff and received by the court, as to statements made by defendant in his deposition taken in another case—i.e., that of Berk v Miller—in the Court of Common Pleas of this county.

In that case—i.e., Berk v Miller—the four children of Henry E. Miller were seeking the dismissal of a petition for partition, brought by Berk, for the reason that their prior sale to Berk of their one-fourth interest in the premises, which are in part the subject of the lease in the instant case, was void, because they had nothing to sell at the time they executed and delivered their quit-claim deed therefor.

In connection with the prosecution of their claim therein, incidentally through the medium of the same counsel who appear for plaintiff in this case, they took the deposition of this defendant, Paul R. Miller, and from the transcript of that deposition, plaintiff read into the record in this case certain declarations of this defendant, claimed to be admissions against interest. When defendant attempted to testify as to the transactions and matters involved in and connected with said claimed admissions, counsel for plaintiff objected, on the ground that defendant was barred from so testifying by the provisions of §11495, GC; and the trial court so held.

That situation squarely raises the question as to whether or not the introduction into evidence, by the administrator or executor of a deceased person, in an action brought by him, of statements, claimed to be admissions against interest, contained in a deposition taken in another case, wherein the parties in interest are the same persons who will benefit through the successful termination of the action brought by the executor or administrator of said decedent, waives the bar of the statute (§11495, GC) as against the testimony of the defendant whose statements were thus introduced into evidence by plaintiff, and if so, to what extent.

Under the common law, parties to actions and persons interested were prohibited from testifying in the trial thereof, because of their interest in the action.

Later, however, by legislative enactment, that rule was abrogated, but it was deemed necessary to surround the change with certain limitations, in order to protect the estates of deceased persons and those claiming under them.

Accordingly, §11495, GC, was passed by the legislature, which, in its present form, in part provides as follows:

"A party shall not testify when the adverse party is * * * an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of a deceased person, except: * * *

"4. If a party offers evidence of conversations or admissions of the opposite party, the latter may testify concerning the same conversations or admissions."

This limitation was enacted upon the theory that the voice of the survivor should not be heard when that of the other party is stilled in death.

When, however, the personal representative produces evidence in his own behalf of conversations or admissions of the opposite party, or the statements of the decedent concerning a certain transaction are given in evidence by the plaintiff, the bar of the statute is waived so as to enable the survivor to testify fully in his own behalf in regard to that transaction.

The legislative aim has apparently been to so protect the rights of the parties that the survivor shall not take advantage of a deceased person, nor shall the personal representative take advantage of the survivor. The party for whose protection the legislative inhibition was created may keep the door closed if he chooses; but if he opens it at all, he opens it wide as to any transaction concerning which he examines the survivor.

The great weight of authority is to the effect that as to any subject upon which the survivor is examined by the personal representative, the survivor may testify, with reference thereto, in extenso.

Mary F. Smith's Appeal, 52 Mich. 415.
Cole v Sweet, 80 NE 355.
Comstock's Admr. v Jacobs, 94 Atl. 497.
Sullivan v Lawler et, 133 So. 911.
Young v Montgomery, 67 NE 684.
**Stream v Barnard, 120 Oh. St 206.**

In the instant case, the defendant made no voluntary statement, but all of the statements offered were made under the compulsion of process for taking depositions. He was not sworn in his own behalf, but in behalf of the heirs of Henry E. Miller, the parties who will benefit from the successful prosecution of this suit.

When the information elicited through the taking of depositions in the Berk case had been obtained, a personal representative was caused to be appointed for the decedent, Apphia B. Miller, for no other apparent reason than to institute this suit for the benefit of those who took said depositions, and then introduce in evidence in this case the alleged admissions of Paul R. Miller made in said depositions; for there were no debts of said estate, and no other claims by it.

In reality, the heirs of Henry E. Miller

are the parties in interest in the instant case, although not the record parties plaintiff.

When this action was tried, parts of the testimony taken by said heirs in the Berk case were offered as a substantial part of the evidence upon which plaintiff sought recovery from the defendant. It was offered to prove plaintiff's case without calling defendant as a witness.

There was full right in the plaintiff to do this, but when defendant offered to give the entire transaction, concerning which he had partially testified in the Berk case, plaintiff invoked the statute to prevent it. After compelling defendant to give evidence as to part of the transaction, plaintiff then insisted defendant could neither explain the transaction nor tell in full what was done.

This court cannot countenance such procedure.

The statute, passed as a shield for the estates of decedents, cannot thus be turned into an instrument of oppression against the survivor. Such procedure would promote, rather than prevent, fraud.

The right of defendant to testify in his own behalf as to the transactions concerning which plaintiff had offered his statements, would not be open to question had defendant been sworn in this action in behalf of plaintiff for purposes of cross-examination. But, as was said by the Court of Appeals of New York in Cole v Sweet, supra—

"* * * there is no substantial difference between such a situation" (one such as set out above) "and the one before us, where the testimony of the defendant taken in another proceeding at the instance of the real plaintiff herein was read in evidence in extenso. Equality cannot be preserved nor unfair advantage prevented, if a party is allowed to do indirectly that which he could not do directly. We think, as was said by the learned Appellate Division, 'that the plaintiff, under the circumstances presented here, by reading the defendant's testimony given in the Surrogate's Court in evidence as a part of his case on this trial, is in no different position than if he had called the defendant to the stand as his witness and elicited from her the same testimony which she had given in the Surrogate's Court. The evident purpose in not calling her was to prevent her from giving on cross-examination the testimony now objected to by plaintiff. * * * The plaintiff, by the course adopted in getting her testimony, has * * * clearly opened the door to the defendant to tell the whole of any transaction about which she had been partially examined, and should be held to have waived the right to invoke the aid of §829 to prevent her from so doing.' This is the rule in every state where the question has been considered, so far as we are able to discover. Lilley v Mutual Benefit Life Ins Co., 92 Mich. 153, 159, 52 NW 631; Matter of Smith, 52 Mich. 415, 18 NW 195; Martien v Barr, 5 Mo. 102."

It becomes thus apparent that the court, in permitting the introduction in this case of defendant's statements made in a deposition taken in another action, and then refusing to permit defendant to testify with reference to those transactions concerning which plaintiff had offered evidence, violated the provisions of §11495, GC, and thereby committed prejudicial error, for which the judgment below would have to be reversed.

Plaintiff, however, attempts to justify the exclusion of defendant's testimony on the ground that the evidence in question offered by plaintiff was written and not oral, and claims that therefore the bar of the statute (§11495, GC) was not waived as to such evidence. In support of that contention counsel for plaintiff rely upon syllabus 2 of Jackson v Ely, Exr., 57 Oh St 450, which reads as follows:

"2. Conversations and admissions concerning which a party may testify under the provision of the fourth exception to §5242, Revised Statutes, are those orally made by him. This exception does not authorize him to testify concerning a written statement in the nature of a settlement between the parties that may be adduced against him on the trial."

It is true that defendant's statements made in the deposition were transcribed and the transcribed copy signed by plaintiff.

However, the distinction seems to be that oral statements, voluntarily made by the survivor, may be offered by the personal representative without waiving the bar of the statute; but oral statements made by the survivor, later transcribed, and signed by the survivor, but made under compulsion of the party offering them and not voluntarily, shall not be received except at the expense, if they be considered merely as admissions, of waiving the bar of the statute and permitting the survivor to testify fully in reference thereto; if they be con-

sidered not merely as admissions, but as testimony of the defendant elicited by the plaintiff on cross-examination, the waiver of the bar of the statute may be such as to remove entirely the incompetency of the survivor to testify as a witness in his own behalf.

This court is of the opinion that the statements of defendant made in said deposition are not to be considered merely as admissions within the purview of **paragraph 4 of §11495, GC**, but, under the circumstances here presented, are to be considered as the testimony of defendant elicited through the medium of cross-examination, and that the plaintiff, by reading the defendant's testimony, given in the deposition taken by plaintiff in the Berk case, in evidence, as a part of his case in this action, is in no different position than if he had called the defendant to the stand as his witness and elicited from him the same testimony which he had given in the deposition in the Berk case.

Having reached the conclusion that the introduction by plaintiff of the excerpts from the deposition of defendant, taken in another case, was tantamount to plaintiff's calling defendant for cross-examination (Cole v Sweet, supra), we address ourselves now to a consideration of the extent of the removal of the bar of the statute, in so far as it pertains to the testimony of defendant.

The Supreme Court of Ohio, in construing **paragraph 4 of §11495, GC**, has gone farther, by way of removing the bar of the statute, than have most courts in a consideration of that question. Syllabus 2 of **Stream v Barnard, Exrx., 120 Oh St 206,** reads as follows:

"2. Where the representative of a deceased person, party to an action, examines as a witness the adverse party to such action, with reference to any conversation, admission or transaction of or with deceased, he thereby waives the incompetency of such adverse party to testify as a witness in his own behalf. Thereafter such adverse party is competent to testify in his own behalf to any matter relevant to any issue in the case of which he has knowledge."

To the same effect are—
Young v Montgomery, supra.
Comstock's Admr. v Jacobs, supra.
Boyd v Conshohocken Worsted Mills, 24 Atl. 287.
In re Goehring's Estate, 106 Atl. 60.

Under the rule announced in Stream v Barnard, supra, the survivor was, at the trial below, after the introduction by plaintiff of the excerpts from defendant's deposition, a competent witness for all purposes, and the refusal to permit him to testify as to all pertinent matters constitued prejudicial error.

The second assignment of error has in part been considered in our discussion of the first assignment.

However, there is another claimed error concerning which serious complaint is made by defendant, and that has to do with the admission of the testimony of Mattie C. Burnham concerning conversations claimed to have been had with the decedent, Apphia B. Miller, subsequent to her execution of the lease to defendant, which conversations were had in the absence of the defendant.

While we seriously doubt the admissibility of this evidence, for the reason that the conversations occurred in the absence of the defendant, and not in his hearing, and for the reason that it consisted of a narration of a past event, yet it is conceded by counsel for plaintiff that it cannot be considered as bearing upon the question of undue influence.

Without that testimony as to statements of the decedent and similar evidence of Mrs. Burnham's son and his wife, we are clearly of the opinion that the record fails to disclose any evidence of undue influence exercised upon Mrs. Miller by defendant.

As to the claim of fraud, that is raised in two ways: first by the claim of breach of a fiduciary relationship, to-wit, principal and agent, which relationship we do not find to be established by the evidence; and secondly, suppression of information which it was the duty of defendant to disclose with reference to the amount of rental which he could secure for the property in question.

When it is considered that defendant was binding his and Mattie Burnham's estate in remainder in the leases which he executed, which in large part were leases for terms of five years, it will readily be seen that he was offering substantially more to his lessees than Apphia B. Miller had been able to offer to hers, she being the holder only of a life estate; and hence, leases from the defendant may reasonably be said to have been worth more to the lessees than those executed by the holder of a mere life estate, and under those circumstances, failure of defendant to apprise his mother of

the rental which he could obtain for said premises would not, in our opinion, constitute fraudulent suppression of information.

We are unable to conclude that there is any evidence of either fraud or undue influence exhibited by the record herein.

Where there is a great disparity in the mental abilities of the contracting parties, as well as between the value of the thing obtained, and the amount paid for it, then perhaps a suspicion of overreaching by the dominant mentality may be justified.

Here, however, the record discloses that Apphia B. Miller was a woman of unusual mental attainments, of such character and mentality as to be virtually immune from undue influence. The record further shows that prior to, at and subsequent to the time of the execution of the lease in question, this defendant was the one child of all her relatives upon whom Mrs. Miller could and did rely. On the contrary, the heirs of Henry E. Miller, the persons who would profit from the successful termination of this action, had, by a continued course of conduct and litigation, probably so estranged the affections of Mrs. Miller that they were the last persons whom she desired to see reap any benefit from the property in question. It was those heirs who were responsible for the disaffirmance of the mortgage for $2500 executed by their father to Mrs. Apphia B. Miller for money advanced by her to Henry E. Miller, which loss fell upon this defendant as the assignee for value of that mortgage. It was those heirs, together with their mother, who sold their undivided one-fourth interest in said premises to Nathan M. Berk, and then, upon partition being brought, attempted to defeat the partition by interposing the claim that they had nothing to sell when they executed the deed conveying their interests.

All in all, there is nothing apparent from this record to commend the heirs of Henry E. Miller to the favorable consideration of a court of equity. Their conduct evidences a desire to obtain all they legally could for themselves, without any consideration for the equitable rights of others.

The only other party who would be benefitted by the setting aside of said lease is Mattie C. Burnham, a sister of the defendant, Paul R. Miller; and her relation to and knowledge of said lease and the affairs of her mother, Apphia B. Miller, are not such as to entitle her to the equitable relief prayed for.

If there is any evidence in the record which tends to create a suspicion or suggestion that said lease was obtained either by fraud or undue influence, such evidence is that given by Mrs. Burnham herself, and her son and his wife, in reference to statements made by Apphia B. Miller, and the further fact that Paul R. Miller did receive income from the use of said property vastly in excess of the rental he agreed to pay under said lease.

As we have heretofore pointed out, the statements just referred to were not competent evidence to be considered on the question of fraud or undue influence; but regardless of that, Mrs. Burnham had full knowledge in reference to them many years before this action was begun, and the record also discloses that Mrs. Burnham had full and complete knowledge of the fact that said lease was very advantageous to the defendant, Paul R. Miller, for she joined in all of the leases made by him and bound her interest in remainder, so that longer-termed leases could be made and corresponding increases in rentals obtained, and for her participation in said transactions she obtained from Paul R. Miller $75 a month.

Thus, if there is any evidence tending to show any fraud or undue influence in the procurement of said lease, Mrs. Burnham knew about such evidence for far in excess of ten years before this action was brought.

Mrs. Miller had a right to do with her interest in said premises as she saw fit, and considering all of the circumstances, we conclude that not only is the transaction in question free from any suspicion of overreaching by defendant, but that the evidence discloses a very evident and proper intention on the part of Mrs. Miller to prefer this defendant, Paul R. Miller, over her other relatives, and that the conduct of the heirs of Henry E. Miller over a period of 15 years furnished good reason therefor.

Entertaining the above views, the judgment of the Court of Common Pleas is reversed, and this court proceeding to render the judgment which the trial court should have rendered, orders that final judgment in favor of defendant be entered, all at the costs of the plaintiff, and with exceptions to plaintiff.

FUNK, PJ, and WASHBURN, J, concur in judgment.